### BOB BASKINS v. THE STATE.

No. 3324.    Decided December 9, 1914.

**1.—Abandonment—Seduction—Marriage—Offense Defined.**

The gist of this offense is that if without the woman's fault, such as would entitle defendant to a divorce: 1, he shall abandon her; 2, or refuse to live with her; 3, or shall be so cruel to her as to compel her to leave him; 4, or shall be guilty of such outrages of cruelty towards her as to make their living together insupportable, thereby leaving her; 5, or under the same circumstances, forcing her to leave him, under these two, and live apart from each other, he is guilty of abandonment.

**2.—Same—Indictment—Beginning of Prosecution.**

Where, upon trial of abandonment after seduction and marriage, the indictment alleged among other things that while said defendant was under legal arrest following the filing of a complaint and before a proper grand jury had been legally organized, etc., to find an indictment charging defendant with seduction, and before he had pleaded to said indictment married prosecutrix, etc., and afterwards unlawfully abandoned her, etc., a motion to quash the indictment on the ground that the filing of the complaint and issuing the warrant of arrest was insufficient to amount in law to the beginning of a prosecu-

tion for seduction, but that an indictment only is in law the beginning of a prosecution, the same was correctly overruled.

### 3.—Same—Beginning of Prosecution—Complaint—Arrest.

Under the statutes, the making and filing of a complaint before a justice of the peace charging the accused with a felony, the issuance of a warrant thereon by the magistrate, placing it in the hands of a peace officer and the arrest of the accused thereunder is the beginning of a prosecution, under article 1450, Penal Code.

### 4.—Same—Statutes Construed.

The fact that the statute prescribes that the marriage of the parties takes place before the defendant pleads to the indictment, must be considered with reference to what the law was aforetime, as, under the former law, the defendant in good faith could offer marriage to the female seduced at any time before the verdict was rendered, while, under the new law, he must do so after prosecution has begun before he pleads to the indictment.

### 5.—Same—Indictment—Justice Precinct—Surplusage.

The fact that the indictment alleged that the complaint had been filed in the Justice Court of Precinct No. —, of the county of the prosecution, thus omitting the number of the precinct, did not vitiate the same, as the words, "Precinct No. —," was surplusage. Following Goodwin v. State, 70 Texas Crim. Rep., 600, and, the indictment being sufficient in other respects, there was no error in overruling a motion to quash.

### 6.—Same—Allegation—Oral Proof—Complaint—Warrant—Evidence.

Where, upon trial of abandonment after seduction and marriage, the indictment alleged the filing of a complaint before a justice of the peace and the issuance of a warrant of arrest thereon, it was necessary that the complaint and warrant or properly certified copies thereof should have been introduced in evidence, or their loss accounted for, and, without this, the introduction of oral testimony as to the contents of said complaint and warrant was reversible error.

### 7.—Same—Evidence—Complaint—Warrant—File Mark.

Upon trial of abandonment after seduction and marriage, there was no error in permitting the State to show by oral testimony the existence of a complaint and warrant of arrest, although the same had not been filed and docketed, and the warrant was returnable to another justice of the peace than the one who issued it, but the complaint and warrant or properly certified copies thereof were the best evidence, and before their contents could be proved by oral testimony, their loss, etc., should have been accounted for.

### 8.—Same—Evidence—Relevant Testimony—Cruel Treatment.

Upon trial of abandonment after seduction and marriage where the indictment had left the number of the justice precinct in which the complaint was filed for seduction blank, there was no error in permitting the State to prove the number of said precinct, nor to permit defendant's wife to testify under the statute as to the ill-treatment of her by defendant's mother and other members of his family in his absence, as the same was brought to his knowledge and tended to show that his wife was forced to leave him because thereof.

### 9.—Same—Accomplice—Charge of Court—Witness—Husband and Wife.

Under the abandonment statute, article 1450, Penal Code, the female seduced and subsequently married and abandoned is a competent witness against the defendant, yet there was no error in the court's charge requiring that her testimony on the subject of seduction must be corroborated, as she was an accomplice therein, and where he did so in substantial accordance with the statute, there was no error.

**10.—Same—Sufficiency of the Evidence—Charge of Court.**

Where, upon trial of abandonment after seduction and marriage, the evidence was sufficient to authorize and require the court to submit the issue: 1, that defendant had abandoned his wife; 2, that he had refused to live with her; 3, that he was guilty of such cruelty or outrages towards her as to make their living together insupportable, etc., the contention that the evidence was insufficient on these issues to authorize a charge of the court thereon is not well taken.

**11.—Same—Seduction—Charge of Court—Conditional Promise.**

Where defendant contended that the evidence did not show seduction, but only a conditional promise of marriage, but the prosecutrix showed that he seduced her as denounced by the statute and other testimony corroborated her testimony, the court correctly submitted this issue under a proper charge.

**12.—Same—Abandonment—Cruel Treatment—Charge of Court—Divorce Law.**

Where, upon trial of abandonment after seduction and marriage, the court instructed the jury that if the defendant unlawfully abandoned prosecutrix after marriage, etc., or unlawfully refused to live with her, or that he was guilty of such outrages and cruelty towards her as to make their living together insupportable, thereby forcing her to leave him and causing them to live apart from each other, to find him guilty of abandonment, etc., the same was sufficient without defining what would constitute abandonment, outrages and cruel treatment under the divorce law, as this was a question for the jury under the evidence under the charge given to them in general terms for a finding.

**13.—Same—Rule Stated—Function of Court—Function of Jury.**

It has long been the settled policy of the laws of this State to keep separate and distinct, and to define accurately, the respective functions of the judge and of the jury in the trial of cases, both civil and criminal, and the judge shall not, in any case, charge or comment on the weight of the evidence, and there was, therefore, no error in the court's failure to pick out certain facts showing or tending to show acts of outrages or cruelties or abandonment, as this would have been a charge on the weight of evidence, in a trial of abandonment after seduction and marriage.

**14.—Same—Charge of Court—Temporary Absence of Defendant—Intention.**

In a trial for abandonment after seduction and marriage, it would be proper to charge the jury in substance that the temporary absence of defendant from his wife with her consent and without intention to abandon her would not authorize a conviction under the Abandonment Statute.

**15.—Same—Charge of Court—Cruelty—Cause of Abandonment.**

Upon trial of abandonment after seduction and marriage, it would have been proper under the evidence that if prosecutrix abandoned the defendant without cause, he would not be guilty; yet, if his treatment of her and that of the members of his family, which was brought to his attention was, under all the circumstances, an act of cruelty, etc., which forced her to leave him, then he would be guilty of abandonment.

**16.—Same—Charge of Court—Place of Abode—Husband and Wife.**

Where, upon trial of abandonment after seduction and marriage, the evidence showed that the parties resided with defendant's family, who were guilty of outrages towards her, there was no error in refusing a special charge to the effect that the husband has the right to designate and fix the place of residence of himself and wife, etc., as such a rule had no application to the facts.

**17.—Same—Minor—Husband and Wife—Case Stated.**

Where, upon trial of abandonment after seduction and marriage, the evidence showed that the defendant failed and refused to protect his wife and to

provide for her, and the cruel treatment of the members of his family towards his wife was part of the scheme to drive her away from him and force her to leave him, his contention that because he was under age and had to live with his parents, and that, therefore, he should be held guiltless of abandonment is untenable.

Appeal from the District Court of Coryell. Tried below before the Hon. J. H. Arnold.

Appeal from a conviction of abandonment after seduction and marriage; penalty, not less than two nor more than three years imprisonment in the penitentiary.

The opinion states the case.

*Mears & Watkins* and *Williams & Williams,* for appellant.—On question of insufficiency of indictment—that an indictment is the beginning of a prosecution: Kemper v. State, 63 Texas Crim. Rep., 1.

As to question of proof of written instrument: Branch's Crim. Law, sec. 335.

On question that husband has right to select residence: Holliman v. Smith, 39 Texas, 357; Womble v. Womble, 152 S. W. Rep., 473; McGowan v. McGowan, 50 S. W. Rep., 399.

*C. E. Lane,* Assistant Attorney General, and *McClellan & McClellan,* for the State.—On question of sufficiency of indictment and the meaning of criminal prosecution: Childress v. State, 30 Texas Crim. App., 160; Bautsch v. State, 27 id., 342; Ex parte Fagg, 38 Texas Crim. Rep., 573, 44 S. W. Rep., 294; Croons v. State, 40 Texas Crim. Rep., 672.

On question of proof of written instrument: Shoemaker v. State, 58 Texas Crim. Rep., 518, 126 S. W. Rep., 887.

PRENDERGAST, Presiding Judge.—Appellant was convicted of the offense of abandonment after seduction and marriage, under article 1450, Penal Code, which is:

"If any person, by promise of marriage, shall seduce an unmarried female under the age of twenty-five years, and shall have carnal knowledge of such female, and if, after prosecution has begun, the parties marry each other, at any time before the defendant pleads to the indictment before a court of competent jurisdiction, and if the defendant within two years after said marriage, without the fault of his said wife, such fault amounting to acts committed by her after said marriage as would entitle him to a divorce under the laws of this State, shall abandon her; or refuse to live with her; or shall be so cruel to her as to compel her to leave him; or shall be guilty of such outrages or cruelties towards her as to make their living together insupportable, thereby leaving her or forcing her to leave him, and live apart from each other, shall be guilty of the offense of abandonment after seduction and marriage; and any person convicted of said offense shall be confined in the penitentiary for a term not less than two nor more than ten years; and

said marriage shall be no bar to the qualifications of said female to testify against the defendant; and the female so seduced and subsequently married and abandoned, as herein provided, shall be a competent witness against said defendant."

The gist of this offense, after the seduction and marriage is shown, is that if, without the woman's fault such as would entitle him to a divorce: (1) He shall abandon her; (2) or refuse to live with her; (3) or shall be so cruel to her as to compel her to leave him; (4) or shall be guilty of such outrages or cruelty towards her as to make their living together insupportable, thereby leaving her; (5) or under the same circumstances, forcing her to leave him, under these latter two, and live apart from each other, then he has committed this offense.

The indictment herein was filed in the lower court on July 22, 1914. After the necessary formal allegations of the organization of the grand jury, etc., it alleged that appellant on or about May 31, 1913, in McLennan County, Texas, did unlawfully seduce Lois Bird, an unmarried woman under twenty-five years of age, and did then obtain carnal knowledge of her by means and in virtue of a promise of marriage to her, and that thereafter on or about September 29, 1913, "a complaint was duly filed in the Justice Court of Precinct No. — of McLennan County, Texas, charging him, the said Bob Baskins in due form of law with the offense of seducing her, the said Lois Bird, as aforesaid, and that thereafter, towit, and after said prosecution was begun as aforesaid, and while he the said Bob Baskins was under legal arrest following the filing of said complaint, and before a proper grand jury of McLennan County, Texas, had been duly and legally organized and empanelled following said complaint and before such grand jury could have acted upon the matters and things set forth in said complaint, and before such proper and legal grand jury could have returned an indictment charging him, the said Bob Baskins, with the offense of seducing her, the said Lois Bird, as aforesaid, and on the 30th day of September, 1913, and before he, the said Bob Baskins, had plead to said indictment before a court of competent jurisdiction, he, the said Bob Baskins, did then and there make a proposal of marriage to her, the said Lois Bird, and the said Bob Baskins and the said Lois Bird did then and there marry each other; and that thereafter, towit, on or about the 15th day of January, 1914, and without fault on the part of his said wife, the said Lois Bird Baskins, such fault amounting to acts committed by her, the said Lois Bird Baskins, after said marriage as would entitle him, the said Bob Baskins to a divorce under the laws of the State of Texas, and in the County of Coryell and State of Texas, he, the said Bob Baskins, did then and there unlawfully abandon her, the said Lois Bird Baskins, and did then and there unlawfully refuse to live with her, the said Lois Bird Baskins, and did then and there and thereafter live apart from her, the said Lois Bird Baskins; and that the said Bob Baskins, after said marriage, was guilty of such outrages and cruelties towards her, the said Lois Bird Baskins, as to make their living together insup-

portable, thereby leaving her and forcing her to leave him, and causing them to live apart from each other."

From this indictment it will be seen that it based this prosecution on four of the five grounds enumerated in the statute, towit: that without her fault (1) he abandoned her; (2) he refused to live with her; (4) he was guilty of such outrages and cruelties towards her as to make their living together insupportable, thereby leaving her, and (5) he thereby forced her to leave him, causing them to live apart from each other.

Appellant made a motion to quash the indictment on five grounds: (1) That the filing of the complaint and issuing the warrant of arrest alleged is insufficient to amount to the beginning of the prosecution for seduction; (2) that a prosecution for a felony can not begin or is not begun until an indictment has been preferred by a proper grand jury; (3) it fails to allege that an indictment had been preferred by a grand jury charging him with seduction before he married Lois Bird; (4) it fails to designate the particular court in which such prosecution was pending against him for the alleged seduction; (5) that the attempt to charge him with outrages and cruelties towards Lois Bird is vague and indefinite and fails to set out the alleged acts of outrages or cruelty relied upon and is insufficient to put him upon notice of what of said acts he is called upon to meet.

These first three grounds present substantially the same question. It is true that our Constitution (art. 1, sec. 10) and statute (C. C. P., arts. 4 and 447) in effect expressly provide that no person shall be finally tried and convicted of a felony, except upon indictment of a grand jury; yet, neither, nor all of these provisions, undertake to say, and do not say, that the filing of a complaint with the justice of the peace charging an accused with the commission of a felony and the issuance thereon of a warrant of arrest and his arrest thereunder by the proper officer, is not the beginning of a prosecution. On the contrary, we think our statutes do provide that the filing of such complaint and issuance of a warrant thereunder and arrest of an accused is a beginning of the prosecution. Article 26, Penal Code, is: "A 'criminal action,' as used in this Code, means the whole, or any part, of the procedure which the law provides for bringing offenders to justice; and the terms, 'prosecution,' 'criminal prosecution,' 'accusation,' and 'criminal accusation,' are used in the same sense."

Article 41, Code of Criminal Procedure, tells who are magistrates, and after enumerating the judges of the Superior Courts, says, that the justices of the peace, mayor or recorder of an incorporated city or town, is a magistrate. The next article says it is the duty of such magistrate, among other things, "to cause the arrest of offenders by the use of lawful means in order that they may be brought to punishment." It is made the duty of the peace officers (art. 44, C. C. P.) to give notice to some magistrate of all offenses committed within his jurisdiction where he has good reason to believe that there has been a violation of the penal laws and to arrest offenders even without warrant, where authorized, in order that they may be taken before the proper magis-

trate or court and be brought to punishment. It is made the duty of the district and county attorneys within their respective spheres to receive complaints of the commission of crime before indictment and to prosecute such matters before magistrates. It is also made the duty of the magistrate,—justice of the peace,—to take such complaints and issue his warrant for the arrest of the party. And when such an accused is brought before him, it is his duty to examine into the truth of the accusation, to hear the testimony, reduce it to writing, and admit the party to bail, binding him over to appear before the grand jury or, in certain events, discharge him from custody if not shown to have committed an offense. (Title 5, chap. 3, C. C. P.) So that we think it clear that the making and filing of a complaint before a justice of the peace, charging an accused with a felony, the issuance of a warrant thereon by the magistrate, placing it in the hands of a peace officer and the arrest of an accused thereunder, is the beginning of a prosecution under our law and under said article 1450, Penal Code. The fact that the statute prescribes that the marriage of the parties before "the defendant pleads to the indictment" must be considered with reference to what the law was aforetime. Until within recent years (art. 969, White's P. C.) the statute permitted an accused to escape a merited conviction for seduction "if the parties married each other at any time before the conviction of the defendant, or if the defendant in good faith offers to marry the female so seduced, no prosecution shall take place, or if begun it shall be dismissed." Under that article and the construction thereof by this court, an accused could experiment with the State and the seduced woman up to the very time when the verdict of the jury was brought in and received by the court. Article 1450, to avoid such an outrage upon the law and the seduced woman, now requires that in order for the marriage of the parties to obliterate the offense of seduction, the accused must marry the woman before he even pleads to the indictment. He can not wait until after the trial has all occurred and been concluded except the verdict of the jury.

The fact that the indictment alleged that the complaint had been filed "in the justice court of (precinct No. — of) McLennan County, Texas," omitting the number of the precinct, does not vitiate the indictment. The words "(precinct No. — of)" embraced in the parentheses above, could and should be regarded as surplusage. (Goodwin v. State, 70 Texas Crim. Rep., 600, 158 S. W. Rep., 274, and cases there collated.) The indictment as to the other features follows and uses the language of the statute substantially, if not literally, and is sufficient.

In the prosecution for this offense and under the indictment herein, it was necessary for the State to prove that a prosecution for seduction of this girl by appellant had been begun by a complaint so charging, and that a warrant directing his arrest therefor was issued. The complaint itself and the warrant, or properly certified copies thereof, should be introduced to show this. The originals or certified copies were, of course, the best evidence of their contents. The State, it seems, on the trial had neither the originals nor such certified copy thereof. It under-

took to prove them up, and, in effect, their contents, by Mr. McLellan, the district attorney, and the justice of the peace to whom the complaint was delivered and who issued the warrant. Appellant properly objected to this and preserved his bills of exception thereto. The bills show that Mr. Bird, Lois' father, had Mr. McLellan to prepare a complaint against the accused; that he took it to Mr. Cosgrove, the justice of the peace, in McLennan County, Texas, where the offense of seduction was alleged to have been committed, and delivered it to the justice of the peace, who acted upon it by issuing a warrant for the arrest of the accused and turned both the complaint and warrant over to the constable with directions to return and file them before a justice of the peace at Waco, the county seat of McLennan County. Neither of these documents are shown to have been lost or destroyed. The court permitted Mr. McLellan, over defendant's objections, to testify that he wrote up the complaint "in due form of law charging this young man (appellant) with seducing the girl in McLennan County, etc." In our opinion this was error which must result in the reversal of the judgment. Sec. 335, Branch's Crim. Law, and cases there cited.

This did not merely prove the existence of such written documents, but went further, as was necessary, and proved the substance of the contents so as to show they in fact charged him with seducing said girl, etc.

As qualified by the court, appellant's bills as to the testimony of Mr. Cosgrove, the justice of the peace, presents no error. The State could prove,—not the contents of the complaint or warrant,—but the fact that a complaint was prepared by the district attorney, furnished to Mr. Bird and delivered to Mr. Cosgrove and that thereon he issued a warrant; and thereunder appellant was arrested, by oral testimony, on the theory that it had been, or would be, shown by the introduction of the original complaint and warrant, or properly certified copies thereof, that they charged him with seducing said girl, etc. The fact, if it be such, that the justice of the peace did not put his file mark on the complaint and did not docket the case on his docket and refused or declined to have anything further to do with the case, could make no difference. If necessary the justice of the peace could have been forced to have put his file mark on the complaint, docketed the case, and had an examining trial of the accused. Neither did the fact, if it be such, that the warrant was returnable before a justice of the peace at Waco make any difference. All these matters, if the complaint and warrant, or certified copies of them had been produced and introduced, or if lost or destroyed, their contents proven, would show a prosecution against appellant, and if for the offense of seduction of said girl and his actual arrest thereunder, that this resulted in his marrying the girl, to avoid conviction for seducing her.

Neither did the court err in permitting the justice of the peace to testify that the precinct of which he was justice was No. 7 of McLennan County, Texas. Neither did the court err in admitting the testimony of appellant's wife as to the treatment of her by his mother and other

members of his family in his absence, the record and the qualification of his bills on this subject showing that all these facts were communicated to him by his wife, they tending to show such treatment of her as would amount to cruel treatment and require him to act thereon and to, if necessary, remove from his parents' home and live with her elsewhere. And as tending to show that she was forced to leave him because thereof and did not leave him voluntarily.

The charge of the court on the subject that appellant's wife was an accomplice as to the alleged seduction and requiring her testimony on that subject to be corroborated, was substantially in accordance with the statute and the many decisions of this court.

Appellant contends that the evidence was insufficient to authorize the court to submit these questions to the jury whether or not: (1) he had abandoned his wife; (2) or refused to live with her; (3) or that he was guilty of such cruelty or outrages towards her as to make their living together insupportable, thereby forcing her to leave him and causing them to live apart, etc. As the case is to be reversed, it is the practice of this court not to discuss the testimony, and we will not do so in this case, but in our opinion, the evidence was sufficient to authorize and require the court to submit these several issues to the jury for a finding. They were the only issues submitted which were alleged as a basis for conviction in the indictment. We will discuss these matters to some extent in discussing appellant's refused charges and his objections to the court's charge.

Appellant contends the evidence showed no seduction of the girl, but an agreement between her and appellant to the extent only that he would marry her if their sexual indulgence resulted in her becoming pregnant. His testimony was to that effect so as to raise the question, but here would show that he seduced her as denounced by the statute. She was amply corroborated by other facts and circumstances. The court, in an apt charge, to which there is no exception, correctly submitted this issue.

Appellant has further objections to the court's charge to this effect: (1) It fails succinctly to define the divorce law in respect to what would constitute abandonment, and outrages or cruel treatment; (2) it does not instruct the jury what outrages and cruel treatment are necessary to meet the requirements of the statute that their living together is insupportable; (3) it did not affirmatively instruct the jury that appellant had the right to select their place of abode, and if she declined to live there or left there, he could not be guilty of abandoning her.

In this connection with this last objection he requested, but the court refused to give, this special charge: "The husband has the right to designate and fix the place of residence of the husband and wife and if he has done so and the wife voluntarily leaves the same and fails to return the husband can not be guilty of abandonment, so in this case if you find that the defendant made arrangements for him and his

wife to live with his father and that such arrangements were consistent and in keeping with the husband at the time and that the prosecutrix in this case voluntarily left said premises and failed to return thereto, and that she had a home there in the event she desired to return then the husband could not be guilty of abandoning her, and that she did not·have the right to require him to follow her up and live or visit at such place as she or her family might designate or think best."

No special charge was asked to cover the other objections or claimed omissions of the court's charge.

The court's charge, after properly submitting for a finding, all other requisites of the offense, on the matters covered by the objections above, instructed and required the jury to find beyond a reasonable doubt: "That he, the said Bob Baskins, did then and there unlawfully abandon her, the said Lois Bird Baskins, or that he did then and there unlawfully refuse to live with her, the said Lois Bird Baskins, or that he, the said 'defendant, was then and there guilty of such outrages and cruelties towards her, the said Lois Bird Baskins, as to make their living together insupportable, thereby forcing her to leave him and causing them to live apart from each other, then in the event you so find, you will convict the defendant of the offense of abandonment after seduction and marriage and assess his punishment," etc.

Our divorce statute (Rev. Stats., 4631) authorizes a divorce in favor of the husband when his "wife is guilty of excesses, cruel treatment or outrages towards him, if such ill-treatment is of such a nature as to render their living together insupportable. Or when she shall have voluntarily left his bed and board for three years with the intention of abandonment."

The statute does not specify what acts are "cruel treatment or outrages," further than to say they must be "such a nature as to render their living together insupportable." Nor does it define abandonment. The civil courts have not undertaken to define these matters particularly. In some cases they have held that certain acts are not such cruelties, and outrages which entitle to divorce, and others are—and that those same acts under some circumstances would amount to cruelties, etc., and under other circumstances, they would not. In other words, the effect of the civil decisions, largely, if not wholly, is to submit such matters to a jury for their finding, in general terms, and control them by the circumstances of each case as it arises.

No decision of this court, so far as we can find, has undertaken to define such terms. Our statute says (art. 10, P. C.):

"Words which have their meaning specially defined shall be understood in that sense, though it be contrary to their usual meaning; and all words used in this Code, except where a word, term or phrase is specially defined, are to be taken and construed in the sense in which they are understood in common language, taking into consideration the context and subject matter relative to which they are employed." And article 58, Code of Criminal Procedure, says: "All words and phrases used in this Code are to be taken and understood in their usual accepta-

tion in common language, except where their meaning is particularly defined by law."

It occurs to us it would be improper for the trial court to pick out certain facts showing or tending to show acts of outrages or cruelties, or abandonment or not, and tell the jury they would or would not be sufficient to authorize conviction or require acquittal, for such a charge would be on the weight of the evidence. Instead, the court should, as he did in this case, submit such matters in general terms for a finding.

We will try to illustrate these points by some of our other statutes and decisions thereunder.

Article 46, Penal Code, provides that when a person does an act which would otherwise be criminal, laboring under a mistake of fact, he is guilty of no offense. The next article says that such mistake of fact must be such that the person so acting would have been excusable had his conjecture as to the fact been correct; "and it must also be such mistake *as does not arise from a want of proper care* on the part of the person committing the offense." The trial judge in Watson v. State, 13 Texas Crim. App., 76, undertook to tell the jury what was, and what was not *proper care,* under said articles. But this court after quoting said two articles, said:

"We think the learned judge should have given in charge to the jury, substantially, the above articles, leaving the jury to determine from the evidence in the case whether or not, under all the facts and circumstances of that particular case, the mistake of the defendant, if he was mistaken, arose from a want of proper care on his part. The question as to *proper care,* we think, depends upon the facts in each particular case. No general rule can be prescribed in relation to it. What would be proper care in one case might be gross negligence in another. What would *be proper care* when considered with reference to one individual might not be when applied to another." To the same effect is the decision in Hailes v. State, 15 Texas Crim. App., 93.

Our statute (P. C., art. 1114) in defining negligent homicide says: "If any person in the performance of a lawful act shall, by negligence and carelessness, cause the death of another, he is guilty of negligent homicide of the first degree." Article 1117 says: "The want of proper care and caution distinguishes this offense from excusable homicide. The degree of care and caution is such as a man of ordinary prudence would use under like circumstances."

Under these articles in Morris v. State, 35 Texas Crim. Rep., 313, complaint was made that the trial judge failed to give his special charge, in effect, telling the jury what was and what was not negligence. This court said: "There was no error on the part of the court in failing to further define 'negligence' than as given in the main charge. The charge of the court is in the following language: 'The degree of care and caution required to avoid danger is such as a man of ordinary prudence would have used under like circumstances.' This was in accordance with the language of the statute on the subject, and is in consonance with the ordinary definition of negligence."

If any person, under our law, by his negligence causes injury to another he is liable in damages therefor. This is statutory where such negligence results in death. (Rev. Stats., arts. 4694-4695.) In our State, when suits for damages first began to be brought because of such negligence, it was a question whether the trial courts could charge as a matter of law what was and what was not negligence, or whether it had to be left to the jury for them to determine as a fact what was and what was not negligence. In T. & P. Ry. Co. v. Murphy, 46 Texas, 356, these questions first came before our Supreme Court, wherein Chief Justice Roberts, for that court, elaborately and in his masterful way discussed and decided them. In that case he stated:

"The (trial) court determined, as a matter of law, that the fact of starting the train instantly, upon giving the signal of departure, was an act of negligence or misconduct on the part of defendant, and that the act of attempting to get on a train, moving rapidly, was negligence on the part of plaintiff; but, if the train was moving slowly, it would not be an act of negligence on the part of plaintiff." He then states that it is only when the statute expressly tells what is, and what is not, negligence as a matter of law, that the court can so tell the jury. That when the statute is silent then the jury must say what is and what is not negligence, saying: "We are of opinion that the charge of the court is erroneous, in instructing the jury as if such laws did exist as applicable to this case, and in thereby relieving the jury from finding the fact of negligence, both as to plaintiff and as to defendant, in the matters mentioned, relating to each one respectively. It has long been the settled policy of the laws of this State to keep separate and distinct, and to define accurately the respective functions of the judge and of the jury in the trial of cases, both civil and criminal. As early as 1853 the Legislature, in pursuance of this policy, enacted a law, that is still in force, which indicates a radical departure from the mode of proceeding in trials, as practiced in the courts of England and of many if not most of the American States, wherein the common law prevails. It is as follows: The judge 'shall not in any case, civil or criminal, charge or comment on the weight of evidence. He shall so frame his charge as to submit questions of fact solely to the decision of the jury, deciding on and instructing them as to the law arising on the facts, distinctly separating the questions of law from questions of fact. He shall not charge or instruct the jury in any case, unless the charge shall have been by him first reduced to writing and signed, and every such charge shall be given in the precise words in which it shall have been written.' (Paschal's Dig., art. 1464.) This is mandatory and peremptory. It leaves no discretion to the judge as to whether or not he shall 'charge or comment on the weight of evidence,' or as to whether or not he shall 'submit questions of fact solely to the jury.' It is a positive direction to a judge as to what he shall do in the trial of a case in his court, however different may be the mode of trying cases in the courts of other countries, of which he may be informed by law-writers or by precedents. This is our system of procedure. The judge is forbidden

by law either to aid a jury, or to infringe upon their province in weigh-
ing the evidence or in deciding upon the facts, in every case submitted
to them. It presupposes that the jury is as competent to find the facts
as the judge is to declare the law. This admits of no exception, so far
as his duty, enjoined by law, is concerned, whether the facts are plainly
established by the evidence, for one side or the other, or are compli-
cated or doubtful." This has been the settled law of our State ever
since that decision.

However, as this case is to be tried again, we think it would be proper
for the court in his charge in substance to tell the jury that the tem-
porary absence of appellant from his wife, with her consent, while at
work, if he had no intention to abandon her, was not such an abandon-
ment of her that that alone would authorize his conviction on that
feature of the case..

Also, as the evidence in appellant's behalf would tend to show she
abandoned him without cause, we suggest the court, in a proper charge,
should tell the jury if she did so he would not be guilty, yet, if his
treatment of her and that of his mother, which was brought to his atten-
tion, was such under all the circumstances as to amount to such cruelty,
etc., as to render their living together there insupportable, and he
thereby forced her to leave him, then it would be his abandoning her
and not she him.

The special charge of appellant copied above is not the law applicable
to this case and should not be given.

It is true our Supreme Court has held that under certain circum-
stances the husband can designate, in connection with the use and occu-
pancy thereof, by himself and wife, what property is the homestead
and what not, yet what they said and held in the cases cited by appel-
lant (Hollsman v. Smith, 39 Texas, 357; Womble v. Womble, 152
S. W. Rep., 473, and McGowan v. McGowan, 50 S. W. Rep., 399) is
not the law applicable herein.

Appellant in this case sought to take advantage of the "baby act,"
and claimed because he was only eighteen or nineteen years old he had
to live with his parents, and the right to, in effect, require his wife to
live there also, notwithstanding his mother, and other members of his
parents' family, treated her in such a way as to make it unendurable
for her to live there, and he made no effort or attempt to shield or
protect her from such treatment. In fact, it is a reasonable inference
from his conduct and treatment of her, and failure and refusal to pro-
tect her and to provide for her, in connection with his mother's treat-
ment of her, was part of his scheme to drive her away from him, and
thereby abandon her, and leave her, and by such cruelties and outrages
make their living together insupportable, thereby leaving her, and forc-
ing her to leave him, under the very terms of the statute.

We are told in Holy Writ (Gen. 2:23-24) that man's wife is bone of
his bone and flesh of his flesh. "Therefore shall a man leave his father
and his mother, and shall cleave unto his wife; and they shall be one
flesh." Our Savior Himself, referring to Genesis above, said: "From

the beginning of the creation God made them male and female. For this cause shall a man leave his father and mother and cleave to his wife; and they twain shall be one flesh; so then they are no more twain, but one flesh." (Mark 10:6 to 8.). Appellant did not plead the "baby act" when he wooed and won this young lady for his bride, nor did he, when he, by his wiles and professions of love for and devotion to her, induced her to yield her person to him under a solemn promise and engagement to marry her, nor did he, when indulging his lustful passion, impregnating her and causing her, in due time, to give birth to an innocent babe. It is too late now for him to attempt to shield himself by the "baby act." He had no right to designate his father and mother's home as his, and under the circumstances shown in this record, to compel her to live there with him.

For the error above pointed out the judgment will be reversed and the cause remanded.

*Reversed and remanded.*