GEORGE HATCH v. THE STATE.

No. 3464.   Decided March 10, 1915.

Rehearing denied April 7, 1915.

**1.—Wife Desertion—Sufficiency of the Evidence.**

Where, upon trial of a wife and child desertion under the Act of April 2, 1913, the evidence sustained the conviction under a proper charge of the court, there was no reversible error.

**2.—Same—County Court—Jurisdiction—Temporary Absence.**

Where, upon trial of wilful wife and child desertion, the evidence showed that the said wife and child had resided for six months next preceding the filing of the complaint, etc., in the county of the prosecution, there was no error in overruling defendant's contention that the County Court of that county had no jurisdiction, and a temporary absence therefrom of the said wife and child could not be deducted from said time.

**3.—Same—Complaint—Information—Necessaries of Life.**

Where, upon trial of wilful wife and child desertion, the complaint and information followed the language of the statute, that the wife and child were then and there in destitute and necessitous circumstances, the same was sufficient, and it was not necessary to allege that the wife and child were without the necessaries of life, etc.

**4.—Same—Ex Parte Affidavits—Practice on Appeal.**

This court is bound by what the record shows was testified to in the trial of the lower court, and is not authorized nor permitted to consider ex parte affidavits filed in this court as to evidence not before the lower court; besides, the matters contained in the affidavit occurred long after the trial, and it was not claimed that the same was newly discovered testimony.

Appeal from the County Court of Fayette. Tried below before the Hon. George Willrich.

Appeal from a conviction of wife and child desertion; penalty, one year confinement in the county jail.

The opinion states the case.

*Aaron Burleson* and *John T. Duncan,* for appellant.

*C. C. McDonald,* Assistant Attorney General, for the State.

PRENDERGAST, Presiding Judge.—Appellant was convicted for wife and child desertion, and his punishment assessed at one year confinement in the county jail.

The complaint and information were filed in the County Court of Fayette County on December 29, 1914. They properly charge the offense. No complaint that they do not has been made.

The prosecution was had under the Act of April 2, 1913, page 188, the first section of which prescribes: "Any husband who shall wilfully or without justification, desert, neglect or refuse to provide for the support and maintenance of his wife who may be in destitute or necessitous circumstances, or any parent who shall wilfully or without justification, desert, neglect or refuse to provide for the support and maintenance of his child, under the age of sixteen years, in destitute or necessitous circumstances, shall be deemed guilty of a misdemeanor," and the punishment of a fine of not less than $25 nor more than $500, or imprisonment in the county jail not more than one year, or by both such fine and imprisonment prescribed.

It is unnecessary to give all the provisions of the seven sections of this Act. In the third section it is provided that "proof of the desertion of such wife or child in destitute or necessitous circumstances or of neglect or refusal to provide for the support and maintenance of such wife or child shall be prima facie evidence that such desertion, neglect or refusal is wilful." Section 6 prescribes specifically that the Act shall be liberally construed.

We have carefully read and studied the statement of facts. There is but little conflict in it. Most of the facts are uncontroverted. Wherever there is any conflict, the jury were clearly authorized to find the fact in accordance with the State's side, as they evidently did. So regarding it, the evidence clearly establishes this state of facts:

Early in 1913, appellant was arrested and placed in jail on a charge of seducing his present wife, Geneva, then a young unmarried girl. Some of the witnesses say this arrest and confinement was under an indictment against him for said offense. But whether an indictment or not, it is certain that prosecution for seducing said girl was then begun against him for said offense. To prevent his conviction and a term in the penitentiary therefor, by his own testimony, he married said girl. A child was born to them on November 22, 1913. Soon after his marriage to her, or at once thereafter, he abandoned her and

refused to live with her as his wife. Thereupon he was again prosecuted, some of the witnesses say by indictment, but whether by indictment or not, prosecution was begun against him therefor. (Baskins v. State, 171 S. W. Rep., 723.) Whereupon he expressly agreed with the State and his wife that he would take her and live with her as his wife in order to avoid conviction and a penitentiary confinement under that prosecution. The State agreed with him that if he would do so it would dismiss that prosecution. Upon taking his wife to live with her as such, the State dismissed that prosecution against him. Whereupon he took her to Galveston and lived with her as his wife in harmony and treated her well for three months and no more. Her mother, a widow, lived in Fayette County, where he had seduced his wife and at first abandoned her, and where he had been twice prosecuted as stated. The parties were negroes. After living with her in Galveston for said three months, on June 15, 1914, he induced her to take their infant child, then less than seven months old, and visit her mother in Fayette County so as to be there on ("Juneteenth") June 19, 1914. When he proposed this visit to his wife she suspected that he was again preparing to desert her and she asked him if that was his intention. He denied that it was. He thereupon bought her a railroad ticket from Galveston to LaGrange and furnished her $2 in cash, promising her then that he would send her money to return home on when she wrote for it. The arrangement between them at the time was that she was to stay on this visit to her mother a short time only. Soon after June 19 she wrote to him asking for money to return to him. He replied that he did not then have the money and would not have it till the first of July, at which time he would send it. He never sent her any money at that time or any other time for that purpose. He testified: "I never idle my time away nor did I while I resided in Galveston when my wife and child lived with me, nor since they came to LaGrange. I have always earned from $5 to $10 per week and for the last two months I was earning $40 per month."

On September 10, 1914, by special delivery letter, which she received that day or the next, he wrote her: "All doing fairly well. Hope you are ok. Say Geneva, you dont need to come back, for I cant stay with you, If I did I would never treat you as a wife. So you can go up the road with your mama. Big Sis will send your things to you this week. Ill leave tomorrow the 11th. If nothing happens for Chicago. I am now in Pullman service my run will be from New Orleans to Chicago— Ill send the baby some thing soon as I get straight— So do the best you can for I cannot use you at all— . . . I am Frank with you. I just dont want you."

It had been the custom of appellant's wife's mother for several years, which he knew, to go from Fayetteville, where her home was and where she lived, to near Granger, in Williamson County, to pick cotton for a while each fall. Evidently what he meant when he said in his letter, "so you can go up the road with your mama," meant that his wife should go with her mother and pick cotton with her in Williamson

County. His wife and her mother, after the receipt of this letter, did go to Williamson County and pick cotton about two months in the fall of 1914. It was clearly shown that their absence from Fayetteville on this occasion was temporary, neither intended nor in fact permanent; that they left all of their belongings at her mother's home at Fayetteville, and as soon as they got through picking cotton they returned and have ever since then remained at her mother's home in Fayetteville.

His wife testified: "My husband left me and my child both in destitute and necessitous circumstances as he did not give us anything to wear and eat since June 15, 1914. All that he did give me was $2.50 on December 3, 1914, and his father gave me $7 while I was at Granger that he says my husband gave to him to give me. The $2.50 and $7, making $9.50, is all the money and all of anything that he gave me and my child from June 15, 1914, up to this day (January 9, 1915). I have no means of support for myself and our child other than that furnished me by my mother, who is a widow woman and has all she can do to take care of herself."

Her mother, Mollie Dobbins, testified: "My daughter has no means of support for herself and the defendant's child, except that which she receives from me. I am a widow woman and can hardly take care of myself, although I am doing the best I can to care for my daughter and my grandchild."

Appellant contends that the County Court of Fayette County had no jurisdiction of this case. In other words, that the venue of the offense could not be laid in Fayette County, because appellant's wife and child had not resided there for six months next preceding the filing of the complaint and information herein, after he abandoned them, even if he did.

Section 4 of said Act is: "An offense under this Act shall be held to have been committed in the county in which such wife or child may have been at the time such abandonment occurred, or in the county in which such wife or child shall have resided for six months next preceding the filing of the complaint, information, or indictment." We are of the opinion that the evidence in this case clearly justified the jury to believe that appellant deserted, neglected and refused to provide for the support and maintenance of his said wife and child when he failed and refused to send them money to return to Galveston soon after June 19, 1914, and before July 1, 1914. Taking all the facts and circumstances, this is the reasonable conclusion of what he intended and did at the time. That would make six months before the filing of the complaint and information herein. The said temporary absence of his wife and child from said Fayette County could not and should not be deducted from making up a portion of this six months. But whether the venue was fixed by that clause of the statute or not, it is clear and certain that the County Court of Fayette County had jurisdiction and venue of this offense under the other clause of the article just above quoted. There can be no doubt from his letter to her of September 10,

1914, and all the evidence that she and her child were then in Fayette County and that his abandonment of her, without question, then occurred if it did not occur previously as stated. So that under either clause of the statute, venue was properly laid and proven.

There is no intimation, in appellant's testimony even, or otherwise in this record, that he had any cause or justification whatever to desert, etc., his wife and child.

Appellant's other complaints are to the insufficiency of the evidence to sustain the verdict. After a careful study of the evidence, we think it establishes appellant's guilt under every feature of the statute, without any question, and we fail to see how any honest jury under it could have done otherwise than convict him. The State has been very lenient with him. Instead of prosecuting him for the offense of abandonment after seduction and marriage, and sending him to the penitentiary for a term of years, it prosecuted him for the offense, as stated in this case, and the jury assessed confinement in the jail for one year without any additional fine, which they could have done for this offense. There was no error in the trial of this cause, and the judgment will be affirmed.

*Affirmed.*

### ON REHEARING.

#### April 7, 1915.

PRENDERGAST, PRESIDING JUDGE.—Appellant has filed quite a lengthy motion for rehearing. For the first time therein he contends that the complaint and information are insufficient because they fail to allege that Geneva Hatch and her child "were without the necessaries of life or were without the means of obtaining them and that they were in want and were poverty stricken or were extremely needy and in a distressing condition," claiming that the said pleadings wherein they alleged, following the language of the statute, that they were respectively "then and there in destitute and necessitous circumstances," were insufficient. It is true, as claimed by appellant, that if the pleading was fatally defective in the particulars mentioned or any other in a material point, advantage could be taken of it, even in a motion for rehearing, but it is well settled in this State, as stated by Judge White, "it will generally be sufficient if the indictment (or complaint and information) follow the exact words of the statute, and it is rarely ever safe to depart from them." We think there can be no question but that the complaint and information in this case, following the language of the statute, was clearly sufficient and that it was not necessary to make the allegations claimed to be necessary by appellant quoted above. White's Ann. C. C. P., sec. 344.

Appellant also still contends that the evidence in this case was wholly insufficient to sustain a conviction. We have carefully again considered the evidence in connection with appellant's renewed attack by his motion for rehearing, and are still of the opinion that the evidence was amply sufficient to sustain the verdict. Appellant, in his motion, at-

tacks the testimony of some of the witnesses in various particulars, and, in addition, attaches four ex parte affidavits made by persons since the decision of this case and in his motion comments thereon in connection with the evidence adduced before the court and jury.

This is an appellate court, not a trial court. We are bound by what the record shows was testified to before the court and jury on the trial of the case and in no contingency are we authorized or permitted to consider ex parte affidavits for the first time filed in this court as to any evidence which was not before the lower court. In no contingency, even in the lower court, would such ex parte affidavits be admissible.

It may be that if these persons who now make affidavits had been before the court and testified, their testimony may have been material and it might have affected the result of the case; but, as stated, we, in no contingency, can consider such matters. Even some of the statements in these ex parte affidavits are of matters occurring long after even the trial of this case in the court below.

We think nothing is presented in the motion for rehearing which would authorize or require this court to reverse this case. There was no claim in the lower court, nor is there in this, that the purported testimony of these witnesses whose ex parte affidavits are attached, was newly discovered testimony in terms of law. There is nothing else in the motion requiring discussion. It is, therefore, overruled.

*Overruled.*