BILL SCHNEIDER V. THE STATE.

No. 10092.   Delivered May 12, 1926.

Rehearing denied June 23, 1926.

1.—Abandonment After Seduction and Marriage—Constitutionality of
Statute—Art. 507, P. C. 1925, Held Valid.

Appellant was charged by indictment with a violation of Art. 507,
P. C. of 1925, and attacks 'the validity of the statute on the ground
that same is in violation of Art. 1, Secs. 14, 16 and 28 of the state
constitution.  We are of the opinion that appellant's contention is not
well founded, and that said statute is not in violation of any of the consti-
tutional provisions referred to.   See Thacker v. State, 62 Tex. Crim.
Rep. 294, and Qualls v. State, 71 Tex. Crim. Rep. 67.

2.—Same—Requested Charges—Properly Refused.

Where, on a trial for abandonment after seduction and marriage,
appellant requested the court to give in charge three special charges,
presenting defensive issues, and none of said issues were supported by any
evidence, and the appellant not having testified, the court properly refused
to give the requested charges.

3.—Same—Evidence—No Error Shown.

Where, on a trial for abandonment after seduction and marriage,
appellant objected to his wife holding their baby in her arms while
testifying as a witness, no error is presented in this complaint.  Following
Rhea v. State, 96 Tex. Crim. Rep. 11, and Snodgrass v. State, 36 Tex.
Crim. Rep. 207.

4.—Same—Evidence—Harmless, if Error.

Where the court permitted prosecutrix to testify in effect that appel-
lant's mother told him to take her, the prosecutrix back to her home,
and the court, at the, instance of the appellant, charged the jury that
acts and declarations of his mother would not be binding upon him, and
that they could not consider same, unless appellant acted with her in
said acts, or declarations, the admission of the evidence was harmless,
if error.

5.—Same—Evidence—Impeaching Witness—Properly Admitted.

Where appellant's mother had testified on the trial that she was not
opposed to the marriage of her son with prosecutrix, and in fact was
willing for him to do so, there was no error in permitting the constable
to testify that when informed of the marriage the mother had insisted

that he shoot her, or permit some one else to kill her to get her out of the trouble, such testimony being properly admissible to impeach her.

### 6.—Same—Declarations of Defendant—Properly Admitted.

Where the state was permitted to prove that the appellant had stated to witness that he was not going back to live with his wife, such testimony was properly admitted in support of the state's theory on the issue of abandonment.

### 7.—Same—Continued.

And so the testimony of appellant's father-in-law, that he had offered a house, land and a team to appellant, after the marriage, was properly admitted on the issue of abandonment and the intent of appellant.

ON REHEARING.

### 8.—Same—Evidence—Held Sufficient.

The record in this case discloses that in June, 1924, appellant, upon being charged by complaint in the justice court with seduction, married his wife, and lived with her for but a short time thereafter, when he sent her back to her parents' home. In October following his marriage a child was born. From the time of its birth to the time of his trial he had continuously refused to live with or to contribute in any way to the support of his wife or child, although many times implored by her to do so. He did not testify in his own behalf, nor make any denial of the facts established by the state witnesses. Under these facts we are unable to agree that there is not a "scintilla of proof" that appellant refused to live with her, prior to the date of the indictment.

### 9.—Same—Requested Charges—Properly Refused.

Where appellant requested several special charges setting forth that under the law the husband has the right to designate the place where the wife shall live, were properly refused, not being called for by any evidence in this case. A man has no right to designate the home of his parents as his, and under circumstances unendurable to the wife, to compel her to live there with him. No error being disclosed, appellant's motion for a rehearing is overruled.

Appeal from the District Court of Lee County. Tried below before the Hon. J. B. Price, Judge.

Appeal from a conviction for abandonment after seduction and marriage, penalty five years in the penitentiary.

The opinion states the case.

*A. M. Felts* of Elgin, for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

BAKER, JUDGE.—The appellant was convicted in the District Court of Lee County for the offense of abandonment after seduction and marriage, and his punishment assessed at five years in the penitentiary.

This prosecution is based upon Art. 507, 1925 Penal Code (Art. 1450, Vernon's Ann. P. C.). The appellant moved the court to quash the indictment, based upon the foregoing statute, alleging that same is unconstitutional and in conflict with Art. 1, Secs. 14, 16 and 28, of the Constitution of this state, for the reason that this statute is ex post facto, retroactive, and permits the placing of a person in jeopardy twice for the same offense, and transgresses that part of the Constitution which provides that no suspension of law in this state shall be exercised except by the legislature, and it is also contended that this article attempts to give to the officers and courts of the state the right to suspend the operation of the statute, supra, on seduction. We are of the opinion that the appellant's contention is not well founded, and that said statute is not in violation of any of the constitutional provisions referred to. Thacker v. State, 62 Tex. Crim. Rep. 294, 136 S. W. 1095; Qualls v. State, 71 Tex. Crim. Rep. 67, 158 S. W. 540.

The record discloses that the appellant was charged before a justice of the peace, sitting as a magistrate's court, with the offense of seducing Miss Hattie Reuther, and that immediately after the examining trial was over he obtained a marriage license and married the prosecutrix; that he spent one night with her at the home of her parents, then took her to the home of his mother, a widow, and lived with her there for three days, after which he took her back to her parents' home and left her, he returning to his mother's. It appears that it was not agreeable with his mother for the appellant's wife to live there, and that he did not desire to live with his wife's parents. It also appears that the appellant stated to his wife that they would remain living with their respective parents until he could secure a place where they could live together as husband and wife. In the course of events, a child was born, and they continued to live separate and apart. A short time prior to the confinement of the prosecutrix, she wrote for the appellant to come and see her, and it appears that he went, but regardless of her insistence that he remain and look after her, he only stayed a few minutes, and then left, and that she could never thereafter prevail upon him to live with her again. It was the contention of the state that the appellant married the prosecutrix in order to avoid the results of a prosecution for seduction, and abandoned her thereafter without cause or provocation. It appears to have been the contention of the appellant, although he failed to testify, that there was an under-

standing between him and his wife that they would live with their respective parents until he could gather his crops and make satisfactory arrangements for a place upon which they could live together. The record discloses that the state introduced witnesses showing that the prosecutrix's father offered a house, land and team to the appellant if he would come and live with his wife, and that other people had talked to the appellant, advising him to take his wife and live with her, but that he stated to them that he would not do so. It is also shown that appellant's wife persistently insisted that he come and take care of her, but that he ignored her importunities, and had never been to see her or the baby after its birth, and refused to furnish her with a doctor, medicine, clothing, or support of any kind.

The court charged fully the law of seduction and abandonment after marriage, and apparently without any serious objections thereto upon the part of appellant's counsel, except insofar as the court failed to give in charge to the jury his special charges Nos. 2, 3 and 4. Special charge No. 2 was to the effect that if the appellant and his wife had an agreement to live apart until they could find a place mutually satisfactory, and in pursuance thereof separated under such agreement, to acquit the defendant. Special charge No. 3 was to the effect that if the appellant did not abandon his wife, but that she abandoned him, and such abandonment was not caused by cruelty on the part of the defendant, then he would not have to follow her, but had a right, as the head of the family, to select the place at which he and his wife should live, and if the jury believed such to be true, to find the defendant not guilty. The remaining special charge requested was substantially to the same effect as No. 3. We are of the opinion, under the facts of this case, that it was not error to refuse these charges.

Bill of exceptions No. 3 complains of the action of the court in permitting the appellant's wife, while testifying as a witness, to hold the baby in her arms during said time, because, it is alleged, there is no law authorizing two people to occupy the witness stand at the same time, and to permit the mother to hold same in this instance inflamed the minds of the jury against the appellant. We are of the opinion, under the ruling of this court in the case of Rhea v. State, 96 Tex. Crim. Rep. 11, 255 S. W. 757, that this bill shows no error. Also see Snodgrass v. State, 36 Tex. Crim. Rep. 207.

Bill No. 4 complains of the action of the court in permitting the prosecuting witness to testify, in effect, that appellant's mother told him to take her, the prosecutrix, back to her home. This bill, as presented, shows no error, and especially in view of the fact that the court, at the instance of appellant, charged the jury that the acts and declarations of his mother would not be binding upon him, and that they could not consider same unless appellant acted with her in said acts or declarations.

· Bill No. 5 complains of the action of the court in permitting the state to prove by the witness, Paul Wernecke, a constable, that the mother of the appellant insisted that he shoot her, or let someone else have his gun for the same purpose, so that she could get out of trouble. It appears that this testimony was offered by the state in rebuttal of the testimony of appellant's mother to the effect that she was not opposed to the marriage of her son with prosecutrix, and, in fact, was willing for him to do so.

Bills 6 and 7 complain of the action of the court in permitting the state to introduce evidence to the effect that the appellant stated that he was not going back to live with his wife. We think this testimony was admissible to support the state's theory on the issue of abandonment.

Bill No. 8 complains of the action of the court in permitting the father-in-law of appellant to testify that he offered a house, land and a team to the appellant after the marriage, which offer appellant refused. We think this evidence was properly admitted on the question of abandonment and the intent of the appellant.

We have examined each and all of the appellant's bills of exception and have carefully examined the entire record, and are forced to the conclusion that there was no error committed in the trial of this case which would warrant a reversal of same. It is therefore ordered that the judgment of the trial court be in all things affirmed.                        *Affirmed.*

The foregoing opinion by the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant complains in his motion for rehearing that the facts do not show that he abandoned

his wife but that on the contrary she abandoned him; and that the trial court should have given a special charge submitting to the jury this issue. Also that he and his wife had an agreement for a temporary separation, such condition to prevail until they could find a place where they could move to themselves—and that the trial court erroneously refused to give a special charge submitting this issue.

It appears from the record that a complaint charging seduction was lodged against appellant in June, 1924, and an examining trial had on June 16th, following which on the same day appellant and prosecutrix were married. They spent a day at her home, and three days at his mother's house, then a little while at her home, and then some weeks at the home of his mother. In July, 1924, according to the testimony of prosecutrix, they went up into Williamson County to try to rent a place for 1925, but did not succeed in finding one, and that they came to an agreement. Her testimony regarding this is as follows:

"Bill and I did have an agreement that I would go back to my home and stay there and he would stay there until we could find a place to move on by ourselves; yes, sir. That was a friendly agreement. The agreement was that I would live with my people and he would live with his people until we found a place to move on together; yes, sir, that was the agreement."

The date of this agreement is not given, nor is there an explanation as to what time it was to cover, nor when it should end. The circumstances were unfortunate. Prosecutrix was one of a large family living in a comparatively small house. The complaint charging appellant with seduction was filed by the father of prosecutrix, and these facts might be looked to as furnishing reasons for unwillingness on the part of appellant to live with her people. He had rented land from his mother for the year 1924 and was living in her home. Prosecutrix swore that his mother was ugly to her, did not speak to her, and made severe statements about her to appellant in the presence of prosecutrix, all of which might account for her reluctance to live in his home. Appellant was a farmer and a farmer can hardly leave his crop in June, and houses to rent at that season are not ordinarily found in the country—hence the reasonableness of the testimony of prosecutrix as to the said agreement. Some time in the fall of 1924 prosecutrix was taken before the grand jury, and here

testified that she then begged them not to indict appellant, and it seems they did not, for the indictment herein was returned in April, 1925.

Prosecutrix swears without contradiction that their baby was born in November, 1924, and that in December of said year and also in January, 1925, she sent to appellant by registered mail letters telling him that she wished to live with him but received no reply. He had not been to see her or their baby from the time it was born until this trial in October, 1925, nor had he contributed to her or the baby anything in the way of money, medicine, clothes, food or paid them the slightest attention. She and her child during this time lived at the home of her parents, a few miles from where appellant lived. In addition, it was in testimony that appellant said in February, 1925, that he would not live again with his wife; that he had used her all he wanted to, was going to get a divorce and marry another girl that he had spotted. Under these facts we are unable to agree that there is not a "scintilla of proof" that appellant refused to live with his wife prior to the date of this indictment, or that it was error for the trial court to refuse the special charges referred to. We can readily see some reason for the agreement for temporary separation made necessary by the situation of appellant and prosecutrix in the summer of 1924, but nothing suggests a continuance of such condition in 1925, nor at the time of this trial. Appellant did not testify. It being before the court and jury without dispute that prosecutrix had written him in December, 1924, and in January, 1925, signifying her readiness and willingness to live with him, presumably at any place he might select; also by Mr. Staphin that in February, 1925, appellant told him that he would not again live with her; also that up to October, 1925, he had not been near her, nor helped her, nor made any effort to find a place for her to live—it was not error to refuse a charge to the effect that if the jury found appellant did not leave his wife but that they separated in pursuance of a peaceable agreement to live apart until they could find a place "mutually satisfactory," appellant would not be guilty of abandoning his wife or unlawfully living apart from her. There was no testimony that the parties agreed to live apart until they could find a place "mutually satisfactory." Had there been such an agreement appellant could have excused himself from such derelictions all the rest of his life on the ground that no such place could be found.

Those special charges setting forth that under the law the husband has the right to designate the place where the wife shall live, seem uncalled for by any testimony in this record. In Baskins v. State, 171 S. W. Rep. 723, this court said that a man has no right to designate the home of his parents as his, and, under circumstances showing treatment unendurable to the wife, to compel her to live there with him. Nothing in this record supports the proposition that from the summer of 1924 to October, 1925, when this trial was had, appellant had ever designated any place as a home for his wife and child and himself.

The motion for rehearing will be overruled.

*Overruled.*