John DAVIS III, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–81–0008–CR.

Court of Appeals of Texas, Amarillo.

March 24, 1982.

---

C. R. Daffern, Amarillo, for appellant.

Tom Curtis, Dist. Atty., Steve Schiwetz, Asst. Dist. Atty., Amarillo, for appellee.

Before REYNOLDS, C. J., and DODSON and BOYD, JJ.

DODSON, Justice.

By grand jury indictment, John Davis III, the appellant, was charged with the offense of arson. To enhance punishment, the indictment further alleged a prior conviction for the offense of fondling. The jury found the appellant guilty of arson and assessed his punishment at twenty-five (25) years in the Texas Department of Corrections. On appeal, the appellant brings four grounds of error. Concluding that the appellant's grounds of error fail to present cause for disturbing the judgment, we affirm.

By his fourth ground of error, the appellant maintains that the circumstantial evidence relied on by the State is insufficient to prove the offense of arson. The unchallenged indictment in this case alleges that on or about 5 July 1975, the appellant knowingly and intentionally started a fire with the intent to damage and destroy a building without the effective consent of Mary Yerger, the owner.

Dan Rorabough, a policeman for the City of Amarillo, testified that on 5 July 1975, he was patrolling in the vicinity of Medical Manor Motel at 5703 Amarillo Boulevard West. The officer stated that at approximately 1:35 a. m., he saw fire and smoke coming from the back portion of the apartment-office at the motel. He called the fire department and made an investigation to determine the exact location of the fire. He discovered that the laundry room, located in the rear portion of the apartment-office building was on fire. Officer Rorabough attempted to put out the fire, but it was not completely extinguished until the fire department arrived.

Mrs. Yerger, the owner, stated that she did not give the appellant or anyone else permission to burn the building, and she testified concerning the damages to the laundry room. The evidence also shows that on 5 July 1975 the appellant resided on the west side of the motel, as did Walter O'Boyle, one of the State's key witnesses.

Shortly after midnight on 5 July 1975, Mr. O'Boyle noticed a figure on the east side of the motel, across the parking lot, at the carport for unit 14. The figure disappeared in front of the automobile in that carport and, shortly thereafter, Mr. O'Boyle saw, in front of that automobile, a flame, as if something were burning. The flame died out in a few seconds.

The figure, which Mr. O'Boyle was unable to identify at that time, proceeded to the carport for unit 17. Again there was a flame. This one appeared to the witness to be from a rolled-up piece of paper burning at both ends. Mr. O'Boyle caught a glimpse of the figure at the carport in the light created by the flame, but he was still unable to identify the figure from that glimpse. This flame, too, died out in a few seconds. The figure proceeded to an air conditioner unit on the south end of the complex, where another flame appeared from a rolled-up piece of paper. This flame, like the others, did not last long. The figure then proceeded to the west side of the motel and disappeared from view. Mr. O'Boyle then either turned his attention to the television program he had been watching or went to bed. Between 12:40 a. m. and 1:00 a. m., Mr. O'Boyle heard footsteps. He looked outside, and a few minutes later he saw the appellant clearly in the parking lot lights coming from the laundry room without any linen. The appellant's build, manner of walking, and facial characteristics matched those of the figure Mr. O'Boyle had earlier seen at the carports.

The appellant disappeared on the west side of the complex. Mr. O'Boyle went to bed. A few minutes later, fire trucks arrived on the scene to put out a fire in the laundry room.

The fire inspector who investigated this fire on 7 July 1975 testified that the fire had not been caused by such things as an electrical malfunction or the water heater, but that, after eliminating all other causes, it was his opinion that the fire had been set and that it had been burning from thirty to forty minutes before it was put out—*i.e.,* from approximately the time Mr. O'Boyle had seen the appellant coming from the laundry room. Specifically, the inspector testified as follows:

Q. And what material was involved in that fire?

A. We had combustible material, linens, bedspreads, wood, towels, sheets and so forth stored in these shelves.

Q. That material had caught fire, is that correct?

A. Uh-huh.

Q. Was there anything—other materials that you found in that area where the fire was confined to?

A. There was also some paper.

Q. And was that paper burned?

A. Yes.

Q. And did you draw—were you able to draw any type of conclusion from that, a finding of that burned paper in that fire in that area there?

A. I had suspected the fire had been set by this paper.

Q. And through your process of elimination and eliminating, as you said, the other causes of the fire, what was your final analysis, your final conclusion, as far as this fire was—the fire in this laundry room was concerned?

A. It was my opinion the fire was set.

■ In deciding the appellant's sufficiency of the evidence challenges, we must, viewing the evidence in the light most favorable to the verdict, *Clark v. State,* 543 S.W.2d 125 (Tex.Cr.App.1976), determine whether there was evidence from which the jurors, being given the circumstantial evidence charge, might reasonably have concluded that every reasonable hypothesis other than the defendant's guilt was excluded. *Flores v. State,* 551 S.W.2d 364 (Tex.Cr.App.1977). The defendant in *Miller v. State,* 566 S.W.2d 614 (Tex.Cr.App.1978), was convicted of arson on the basis of circumstantial evidence no greater than that presented here. In that case, the defendant was seen near his restaurant, approximately ten minutes before a fire in the restaurant was observed and reported, trying to notify potential customers and his employees that the restaurant would be closed that day. He also left the scene in a hurried manner, running two stop signs, and later asked his cook not to mention having seen him that morning. The Court of Criminal Appeals found this evidence to be sufficient to support the conviction.

■ In the present case, the jury could reasonably have found that, on a night when someone whose build, whose manner of walking, and whose facial characteristics resembled appellant's, had attempted to set three fires before disappearing on the side of the motel on which appellant resided, and on a night when appellant was seen leaving the laundry room without any laundry at approximately the time when the fire had started, the hypothesis that it was someone other than the appellant who had set the laundry room fire was, if reasonable, excluded by the evidence.

Appellant refers to *Adrian v. State,* 587 S.W.2d 733 (Tex.Cr.App.1979); *Bussey v. State,* 474 S.W.2d 708 (Tex.Cr.App.1972); and *Duncan v. State,* 109 Tex.Crim. 668, 7 S.W.2d 79 (1929), as arson cases in which circumstantial evidence greater than that in the present case was held insufficient to support a conviction. Each of those cases, however, lacked certain essential elements of proof. In those cases, the State presented no evidence that the fires in issue were of incendiary origin, nor even opinion evidence tending to negate the possibility that the fires resulted from defective electrical wiring, a defective water heater, spontaneous combustion, or some other non-incendiary cause. In the present case, evidence was presented from which the jury could have concluded that the fire was indeed of

incendiary origin. The appellant's fourth ground of error is overruled.

In his third ground of error, the appellant maintains that the trial court committed reversible error by refusing to dismiss this case because he was not afforded a speedy trial in compliance with the Sixth Amendment to the United States Constitution.[1] We disagree. The offense for which the appellant was convicted was committed on 5 July 1975, and a complaint was filed and a warrant for the appellant's arrest was issued five days later. On 1 May 1977, he was arrested in Missouri on two counts of arson in that state and sentenced to two years in the Missouri Penitentiary. He was discharged from that penitentiary on 10 October 1978, and he returned to Texas, where he was arrested in Arlington on 25 July 1979. He was indicted for the 1975 arson on 13 September 1979. The State announced ready for trial on 8 November 1979, and trial was had on 12 December 1979.

The appellant argues that his right to a speedy trial began when the complaint was filed and the warrant issued for his arrest, that the State failed to offer any reason which would excuse a delay of four and one-half years, and that, therefore, his constitutional right to a speedy trial was violated. In support of his position, he cites *Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975), for the proposition that the length of the delay for the purposes of the Constitution's speedy trial provision is measured from the time when formal charges are filed against the defendant. In *Dillingham*, the Supreme Court held that the speedy trial provision begins to run at the time a defendant is arrested if the arrest occurs prior to the filing of an indictment. The question presented in both *Dillingham* and *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), is, "When does a criminal prosecution commence?" In *Marion*, the Supreme Court stated that "the

Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused.'" The Supreme Court further stated that a defendant becomes an "accused" when either a formal indictment or information is issued or when the defendant is arrested and held to answer a criminal charge. *Id.* at 320, 92 S.Ct. at 463. This principle was reaffirmed in *Dillingham*, 423 U.S. at 65, 96 S.Ct. at 304. The Texas Court of Criminal Appeals, citing *Marion and Dillingham*, has stated that "[i]n determining whether the right to speedy trial has been denied, the length of delay is measured from the time the defendant is formally accused or arrested." *Turner v. State*, 545 S.W.2d 133, 137 (Tex.Cr.App. 1977).

Some lower courts have latched onto the word "accused" in the *Marion* opinion and have construed the word in such a manner as to support a contention that the speedy trial provision can be triggered prior to either the issuance of a formal indictment or information or the defendant's arrest. The court in *Houchens v. Cox*, 490 F.Supp. 425, 428 (E.D.Virginia 1980), stated that the defendant in that case became an "accused" when the warrants for his arrest were issued. The court in *United States v. Terrack*, 515 F.2d 558, 559 (9th Cir. 1975), reasoned that "once a suspect is 'charged' with an offense, he is an 'accused' within the meaning of *United States v. Marion*." After making reference to Black's Law Dictionary and Rule 3 of the Federal Rules of Criminal Procedure, that court concluded that a complaint was a "charge." *Id.* This was consistent with its holding in *Northern v. United States*, 445 F.2d 427, 429 (9th Cir. 1972), that "the filing of a criminal complaint, or indictment where there is no complaint, marks the inception of the speedy trial guarantee of the Sixth Amendment." *See also Jones v. Superior Court of Los Angeles County*, 3 Cal.3d 734, 91 Cal.Rptr. 578, 478 P.2d 10 (Cal.1970); *State v. Johnson*, 275 N.C. 264, 167 S.E.2d 274 (1969).

---

**1.** The Sixth Amendment's speedy trial provision applies to state proceedings through the Fourteenth Amendment. *Klopfer v. North Car-* *olina*, 386 U.S. 213, 222–23, 87 S.Ct. 988, 993– 94, 18 L.Ed.2d 1 (1967).

Other courts have held that the filing of a complaint in a felony prosecution will not trigger the protections of the speedy trial provision. The Missouri courts have consistently held that

> [t]he constitutional right to a speedy trial has no application until a criminal *prosecution* is commenced. The constitutional provisions invoked contemplate a pending *charge* and not merely a pending complaint, which represents a mere possibility that a criminal charge will be filed. Felonies are prosecuted by indictment or information.

*State v. Caffey,* 438 S.W.2d 167 (Mo.1969), *cert. denied,* 396 U.S. 853, 90 S.Ct. 114, 24 L.Ed.2d 102 (1969). (Emphasis theirs). This position is based on the fact that

> [t]he principal and, perhaps, single function of a complaint is to serve as the basis for an application for an arrest warrant. [Cites omitted.] Being merely an application, which can be refused for constitutional or statutory non-compliance, the complaint itself places no actual restraints on the putative defendant nor does its filing require him to begin to protect his interests; thus, although the complaint may be the first step in a criminal prosecution, [cites omitted], the complaint does not "initiate a criminal prosecution" and it does not make the putative defendant an "accused" as those terms are defined in *Marion* and *Dillingham,* for the complaint itself does not initiate any of the financial, social or psychological harm protected against by the right to a speedy trial.

*State v. Black,* 587 S.W.2d 865 (Mo.App. 1979). *See also Favors v. Eyman,* 466 F.2d 1325 (9th Cir. 1972); *People ex rel. Coca v. District Court of Seventh J.D.,* 187 Colo. 280, 530 P.2d 958 (1975); *Preston v. State,* 338 A.2d 562 (Del.Sup.1975); *King v. State,* 6 Md.App. 413, 251 A.2d 628 (1969).

■ We have been referred to no case in which a Texas court has been faced with this precise issue. We agree with the Missouri analysis. As the Supreme Court explains in *Marion,* 404 U.S. at 320, 92 S.Ct. at 463, "it is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." We do not believe that the Supreme Court's reference to a formal indictment or information or an actual arrest was intended to be merely illustrative of many occurrences that might engage the constitutional speedy trial provision. We do not read *Marion* as supportive of the proposition that a less formal accusation or charge, such as the filing of a complaint or the issuance of an arrest warrant, will suffice. Indeed, the Supreme Court specifically "decline[d] to extend the reach of the amendment to the period prior to the arrest." *Id.* at 321. Furthermore, we agree with the court in *United States v. Shaw,* 555 F.2d 1295, 1298 (5th Cir. 1977), which cited *Marion* for the proposition that, when considering "pre-arrest, pre-indictment delay, the speedy trial clause of the Sixth Amendment is irrelevant to our analysis."

■ We are persuaded that in felony prosecutions the computation of time for the purpose of the Constitutional speedy trial provision begins either (1) at the time of the arrest of the putative defendant or (2) when the putative defendant is formally charged by indictment or information. It is at one of these points that the putative defendant needs to be protected from the main evils of inordinate delay: the interference with one's liberty, the disruption of one's personal life, and the anxiety and concern associated with public accusation. *Marion,* 404 U.S. at 320, 92 S.Ct. at 463. Those evils do not generally accompany the mere filing of a complaint. If an individual is at all aware that a complaint has been filed against him, he is under no more hardship from the filing of that complaint than is anyone who is aware that the State is investigating his activities and that a formal charge might well be the ultimate result.

■ In the present case, the appellant was arrested on 25 July 1979, prior to being

indicted. For Sixth Amendment purposes, he became an "accused" on that date. He was tried within five months after his arrest. Under these circumstances, we are unwilling to conclude that the appellant was denied his Sixth Amendment right to a speedy trial. The appellant's third ground of error is overruled.

By his second ground of error, the appellant claims that the trial court committed reversible error by refusing to dismiss this case because the appellant was not afforded a speedy trial in accordance with the Texas Speedy Trial Act, Tex.Code Crim.Pro.Ann. art. 32A.02 (Vernon Supp.1981). He argues that, for the purposes of the Act, this criminal action commenced on 10 July 1975 when a complaint was filed, or on 1 July 1978 when the Speedy Trial Act took effect. He further contends that he is entitled to have the charge against him dismissed because the State was not ready for trial until 8 November 1979.

We are persuaded that in felony prosecutions the Texas Speedy Trial Act must be construed in light of the provisions of Article 1, Section 10 of the Texas Constitution and Section 1.05 of the Texas Code of Criminal Procedure. Article 1, Section 10 of the Constitution of the State of Texas provides, in pertinent part:

> In all criminal prosecutions the accused shall have a speedy public trial . . . and no person shall be *held to answer* for a criminal offense, *unless on an indictment of a grand jury*, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary . . .

Section 1.05 of the Texas Code of Criminal Procedure provides, in pertinent part:

> In all criminal prosecutions the accused shall have a speedy public trial. . . . No person shall be held to answer for a felony unless on indictment of a grand jury.[2]

Section 1 of the Texas Speedy Trial Act provides:

Section 1. A court shall grant a motion to set aside an *indictment, information*, or *complaint* if the state is not ready for trial within:

(1) *120 days of the commencement of a criminal action if the defendant is accused of a felony;*

(2) 90 days of the commencement of a criminal action if the defendant is accused of a misdemeanor punishable by a sentence of imprisonment for more than 180 days; or

(3) 60 days of the commencement of a criminal action if the defendant is accused of a misdemeanor punishable by a sentence of imprisonment for 180 days or less or punishable by a fine only.

[Emphasis added.]

Section 2(a) of the Act provides, in pertinent part:

> . . . a criminal action commences for purposes of this article when an indictment, information, or complaint against the defendant is filed in court, unless prior to the filing *the defendant is either detained in custody or released on bail or personal bond* to answer for the same offense or any other offense arising out of the same transaction in which event the criminal action commences when he is arrested.

[Emphasis added.]

■ Under Article 1, Section 10 of the Texas Constitution and Article 1.05 of the Texas Code of Criminal Procedure, a person shall not be "held to answer" for a felony unless on indictment by a grand jury. When we read Section 1(1) and Section 2(a) of the Texas Speedy Trial Act in light of the mandatory language of Article 1, Section 10 of the Texas Constitution and Article 1.05 of the Texas Code of Criminal Procedure, we must conclude that, as used in Section 2(a), the word "indictment" refers to felony prosecutions and the words "information or complaint" refer to misdemeanor prosecutions. It follows that, for the pur-

---

**2.** We acknowledge that a defendant may voluntarily waive the necessity of a formal indictment in a non-capital felony. Tex.Code Crim. Pro.Ann. art. 1.141 (Vernon 1977). However,

that situation is not before us, and we express no opinion as to when the speedy trial provision takes effect in such a case.

poses of the Texas Speedy Trial Act, a felony criminal action commences when an indictment is filed in court or when the accused is arrested.

■ In the present case, an indictment was a prerequisite to prosecution. The action, therefore, commenced on the date of appellant's arrest, because he was arrested prior to the issuance of the indictment. The State announced ready for trial within 120 days of appellant's arrest, and there is no indication that the State was not actually ready at that time. Under these circumstances, we conclude that appellant was not deprived of his right to a speedy trial under the Texas Speedy Trial Act. The appellant's second ground of error is overruled.

■ By his first ground of error, the appellant asserts that the trial court erred in admitting into evidence a prison packet from the State of Missouri, because the packet contained details of appellant's conviction for arson in that state as well as a reference to an extraneous offense. The record indicates that at trial, appellant objected to the admission of the prison packet as follows:

MR. DAFFERN: We would object to the introduction of State's 5, Your Honor, there is no proper predicate, they are extraneous materials, should not be included in this, and I would ask the State under what provision of Texas law he is trying to introduce that.

The Court of Criminal Appeals, in *Hernandez v. State*, 599 S.W.2d 614, 617 (Tex. Cr.App.1980), held that an objection to the admission of a prison packet is defective if it is leveled at the entire exhibit, rather than being restricted to the part which is made subject to the ground of error. Here, the objection at trial was leveled at the entire exhibit, not at the details of the Missouri arson conviction nor at a particular extraneous offense. Thus, the objection is insufficient to preserve error. The appellant's first ground of error is overruled.

In summary, the appellant's four grounds of error are overruled. The judgment is affirmed.

REYNOLDS, Chief Justice, dissenting.

In my view, appellant John Davis III has brought before us an appellate record demonstrating a denial of the right to a speedy trial he enjoys under the Sixth Amendment to the Constitution of the United States. I, therefore, respectfully dissent to, respectively, the overruling of his third ground of error and the affirmance of the judgment.

The record establishes without contradiction these chronological events:

July 5, 1975: the fire, which gave rise to the charge, and conviction, of appellant for the felony offense of arson;

July 10, 1975: a complaint, filed in the Amarillo, Texas, justice of the peace court, charged appellant with the felony offense of arson upon which an arrest warrant was issued;

August 28, 1975: Appellant moved from Amarillo to Missouri;

May 1, 1977: appellant arrested in Missouri for offense of attempted arson committed in that state; later pleaded guilty and was sentenced to two years confinement in Missouri penitentiary;

October 10, 1978: appellant released from Missouri penitentiary;

January, 1979: appellant moved to Arlington, Texas, and worked under his true name;

July 25, 1979: appellant arrested in Arlington;

September 13, 1979: indictment returned charging appellant with the felony offense of arson, the offense being charged in the identical language of the 10 July 1975 complaint;

November 8, 1979: the State announced ready for trial;

November 9, 1979: the trial court heard and overruled appellant's motion to dismiss; and

December 12, 1979: the trial began and resulted in appellant's conviction for the crime of arson, the offense first charged against him by the 10 July 1975 complaint.

The first inquiry must be whether the delay of four years and five months, from the 10 July 1975 complaint to the 12 December 1979 trial, is a factor for consideration in appellant's invocation of the Sixth Amendment provision that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . ." The majority has held that it is not, reasoning, in brief, that under the Sixth Amendment a prosecution does not commence by the filing of a complaint, but only commences when one becomes an "accused" by either the issuance of a formal indictment or information or the arrest and holding of the defendant to answer a criminal charge. I disagree with both the holding and the rationale upon which it is founded.

*United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), teaches that "the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused,' . . ." and that "the protection of the Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been "accused" in the course of that prosecution." 404 U.S. at 313, 92 S.Ct. at 459. Thereafter, the Court, having recognized that an arrest is a public act, *i.e.,* a public accusation, and having commented on its consequences, said:

> So viewed, it is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.
>
> Invocation of the speedy trial provision thus need not await indictment, information, or other formal charge. But we decline to extend the reach of the amendment to the period prior to arrest. Until this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusations: . . . .

404 U.S. at 320–21, 92 S.Ct. at 463–64. It is with reference to parts of this language that the majority states they do not read

*Marion* as supportive of the proposition that, in effect, the filing of a complaint will suffice to trigger the Sixth Amendment's speedy trial provision. But *Marion* is not, in my appraisal, so restrictive, for the Court further explains in 404 U.S. at 325, 92 S.Ct. at 466 that

> In the case before us, neither appellee was arrested, charged, or otherwise subjected to formal restraint prior to indictment. It was this event [the indictment], therefore, that transformed the appellees into "accused" defendants who are subject to the speedy trial protections of the Sixth Amendment.

Given all the language of *Marion,* I read it as teaching that the protection of the Sixth Amendment speedy trial provision is activated when a person first becomes publicly accused of a crime, the prosecution for which begins either by the filing of an official charging instrument, which historically includes a complaint, or by an arrest. Otherwise, the Court used useless language in equating "other formal charge" and "charged" with indictment and information and coupling arrest with "public accusations," all of which, I submit, illustrate when "the putative defendant" in some way becomes an "accused."

Moreover, it seems to me that the language of *Marion* referred to by the majority is, when considered in its proper context, explanatory of the Court's pronouncement that the Amendment's protection "is activated only when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the course of that prosecution." 404 U.S. at 313, 92 S.Ct. at 459. Within the meaning of the explicit guarantees of the Sixth Amendment, a criminal prosecution has begun when the government initiates criminal proceedings, committing itself to prosecute. *Kirby v. Illinois,* 406 U.S. 682, 689–90, 92 S.Ct. 1877, 1882–83, 32 L.Ed.2d 411 (1972). And it has been held that within the meaning of *Marion,* a person becomes an "accused" when he is charged with an offense by a complaint, the filing of which marks the inception of the Sixth Amendment's speedy trial guar-

antee. *United States v. Terrack*, 515 F.2d 558, 559 (9th Cir. 1975).

These same principles are expressed in Texas law and rightly so, for the Sixth Amendment's guarantee to an accused of a right to a speedy trial is imposed upon the states by the due process clause of the Fourteenth Amendment. *McKinney v. State*, 491 S.W.2d 404, 407 (Tex.Cr.App. 1973). Notwithstanding the majority's citation of Texas constitutional and statutory provisions for the proposition that no person shall be finally tried and convicted of a felony except upon indictment by a grand jury, unless waived, none of those provisions undertake to say, and do not say, that the filing of a complaint accusing one of a felony offense with a justice of the peace is not the commencement of a prosecution. In fact, it has been held, long ago and recently, that the filing of a complaint accusing one of a felony offense with a justice of the peace is the initial step in the commencement of a prosecution under Texas law. *Baskins v. State*, 75 Tex.Cr.R. 537, 171 S.W. 723, 725 (1914); *Ex parte Clear*, 573 S.W.2d 224, 228 (Tex.Cr.App.1978).

Indeed, the very wording in *Clear*, paraphrased as to date and crime, exactly expresses the situation before us thusly: The complaint filed against appellant on 10 July 1975 was the initial step in a criminal action instituted to secure his conviction and punishment for the crime of arson. *Id.* So, the appellant became, within the meaning of *Marion*, an "accused" on 10 July 1975 when the complaint was filed, and the length of delay is measured from that date. *Arivette v. State*, 513 S.W.2d 857, 861 (Tex.Cr.App. 1974).

The four years and five months delay is prima facie unreasonable and, in determining whether there was a denial of a speedy trial, the related factors of the reason for the delay, appellant's assertion of his right to a speedy trial, and prejudice to him must be considered together with the relevant circumstances revealed in this record. *Barker v. Wingo*, 407 U.S. 514, 530–33, 92 S.Ct. 2182, 2192–93, 33 L.Ed.2d 101 (1972). Other than speculation which may arise from the recorded dates, the delay is unexplained evidentially.[1] Indisputably, appellant did not request a speedy trial; yet, his silence could mean that he was unaware of the necessity for a demand.[2] *Id.* 407 U.S. at 526 n. 25, 92 S.Ct. at 2190 n. 25.

In considering the factor of prejudice, we must adhere to the requirement that some prejudice to the accused resulting from the delay must be shown, although he does not necessarily have to show actual prejudice. *Courtney v. State*, 472 S.W.2d 151, 154 (Tex. Cr.App.1971). During some sixteen months of the four years and five months delay in this prosecution, appellant was confined in the Missouri penitentiary,[3] and it is judicially acknowledged that incarceration in another jurisdiction can prejudice an accused in matters other than the impairment of his presenting a defense. *Turner v. State*, 545 S.W.2d 133, 138 (Tex.Cr.App.1976). More pertinent, though, is that the State's successful prosecution depended upon eyewitness identification given four years and five months after the event. In *United States v. Butler*, 426 F.2d 1275, 1277 (1st Cir. 1970), the court thought that a delay from accusation to arraignment of nine months in a case "where the result turned on eyewitness identification which necessarily became less reliable with the passage of time, . . . is

---

1. Appellant states that the State knew or should have known of his whereabouts, at least from August, 1978, as shown by the "FBI wanted rap sheet" in the district attorney's file; however, inasmuch as this document is not made an official part of the appellate record, no consideration can be given to the statement.

2. Again, no consideration can be given appellant's appellate statement that he was informed the charges had been dropped, for an objection to that testimony was sustained.

3. Likewise, no consideration can be given to appellant's reference to his testimony that he was informed of a hold order on him from Texas, nor to his appellate assertions that because of the hold order, he suffered anxiety and concern. The court excluded the testimony from consideration by sustaining hearsay objections.

overly long absent a legitimate reason therefor." The delay here was six times as long. But more important, it was appellant's testimony that because he could not recall the events, his whereabouts or what he was doing on 5 July 1975, he could not assist his attorney with those matters or witnesses thereto. One of the trial interests deserving protection by a speedy trial is limiting the possibility that the defense may be impaired. *Barker v. Wingo, supra*, 407 U.S. at 532, 92 S.Ct. at 2193.

With the showing of these circumstances, a presumption or prima facie case of prejudice arose. The State exerted no effort to prove that appellant suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay. Where, as here, the prima facie showing of prejudice has not been rebutted, the prosecution should be dismissed. *Courtney v. State, supra*, at 154.

Accordingly, and on balance, I would sustain appellant's third ground of error, which would be dispositive of the appeal, reverse the judgment and order the prosecution dismissed. Because the majority has not done so, I respectfully dissent.