Gustavo RIOS, Appellant,

v.

STATE of Texas, Appellee.

No. 13–84–255–CR.

Court of Appeals of Texas, Corpus Christi.

Feb. 7, 1985.

Joseph A. Connors, III, McAllen, for appellant.

Theodore C. Hake, Crim. Dist. Atty., Edinburg, for appellee.

Before UTTER, KENNEDY and KEITH, JJ.

## OPINION

UTTER, Justice.

This is an appeal from a jury conviction for the felony offense of burglary of a habitation with intent to commit rape for which the trial court assessed appellant's punishment at ten years in the Texas Department of Corrections, probated for ten years. We reverse the judgment of the trial court.

In his first and second grounds of error, appellant asserts that the trial court erred in overruling appellant's motion to dismiss for want of a speedy trial.

The offense, for which appellant was convicted, was committed on February 18, 1983. Later that night, appellant voluntarily went with a police officer to the Mission

Police Department for questioning, after which appellant was not arrested but was allowed to leave. On February 24, 1983, a formal complaint was filed in Justice of the Peace Court, which then issued a warrant for appellant's arrest. The complaint charged appellant with the commission of the felony offense of Burglary of a Habitation with Intent to Commit Rape. Appellant was subsequently indicted for the offense on March 7, 1984, and was arrested on the indictment on March 14, 1984. The State first announced ready for trial on March 12, 1984. On April 2, 1984, appellant filed his motion to dismiss for want of a speedy trial; and, a hearing on the motion to dismiss was held on April 18, 1984. At the conclusion of the hearing on the motion to dismiss, the trial court overruled appellant's motion to dismiss after concluding (1) that, based upon the authority of *Davis v. State,* 630 S.W.2d 532 (Tex.App.—Amarillo 1982, no pet.), the criminal action against appellant did not commence for Texas Speedy Trial Act purposes until appellant was indicted on March 7, 1984, and (2) that, since the State made an announcement of ready for trial on March 12, 1984, within 120 days after appellant was indicted, the State did not violate appellant's rights under the Texas Speedy Trial Act.

In support of his first and second grounds of error, appellant contends (1) that, for purposes of the Texas Speedy Trial Act, TEX.CODE CRIM.PROC.ANN. art. 32A.02 (Vernon Supp.1984), the criminal action against him commenced (a) at the time when he was allegedly "detained in custody" on February 18, 1983, or, in the alternative, (b) when the formal complaint was filed against him on February 24, 1983, and (2) that, since the State did not announce ready for trial until more than one year (and more than 120 days) after both events, the trial court should have granted his motion, to dismiss. In response, the State argues (1) that, under the authority of *Davis v. State,* the criminal action against appellant commenced on March 7, 1984, when appellant was charged by indictment with the offense or, in the alternative, (2) that, if the action commenced at the time of the questioning on February 18, 1983 or at the time of the filing of the complaint and issuance of the warrant of arrest on February 24, 1983, "thus putting the State to the burden of proving up excusable periods, the State has met this burden by showing due diligence to locate [appellant], which was unsuccessful."

The Texas Speedy Trial Act, TEX.CODE CRIM.PROC.ANN. art. 32A.02 (Vernon Supp.1984), in pertinent part, provides:

Art. 32A.02. Time limitations

Section 1. A court shall grant a motion to set aside an indictment, information, or complaint if the state is not ready for trial within:

(1) 120 days of the commencement of a criminal action if the defendant is accused of a felony;

\* \* \* \* \* \*

Sec. 2. (a) Except as provided in Subsections (b) and (c) of this section, *a criminal action commences for purposes of this article when an indictment, information, or complaint against the defendant is filed in court,* unless prior to the filing the defendant is either *detained in custody* or released on bail or personal bond to answer for the same offense or any other offense arising out of the same transaction, in which event the criminal action commences when he is arrested.

\* \* \* \* \* \*

Sec. 4. In computing the time by which the state must be ready for trial, the following periods shall be excluded:

\* \* \* \* \* \*

(4) a period of delay resulting from the absence of the defendant because his location is unknown and:

(A) he is attempting to avoid apprehension or prosecution; or

(B) the state has been unable to determine his location by due diligence;

(5) a period of delay resulting from the unavailability of the defendant whose location is known to the state but whose

presence cannot be obtained by due diligence or because he resists being returned to the state for trial;

\* \* \* \* \* \*

(9) a period of delay resulting from detention of the defendant in another jurisdiction, if the state is aware of the detention and exercises due diligence to obtain his presence for trial;

(Emphasis added.)

Regarding appellant's claim that he was "detained in custody," the record of the hearing on the motion to dismiss reflects that, on February 18, 1983, after the commission of the offense, Mission Police Officer Victor Flores went to appellant's residence where, after appellant's mother allowed him inside, Flores then visited with appellant. There, Flores asked appellant to go with him to the police station "to clean up his name, to investigate the situation a little bit further" regarding the offense. Flores testified that "I wasn't arresting him for anything. I asked him if he wanted to go with me" and that, if appellant had refused to go with him, "I would probably take him out for investigation purposes only"—"that would have been wise."

■ Appellant went voluntarily to the police station with Officer Flores; and, at the police station and after having been given his Miranda warnings, appellant was interrogated, fingerprinted and then taken home by Mission Police Officer George Rangel. Officer Rangel testified that, during the interrogation, appellant was "free to leave if he wanted to go" and, after the interrogation, he told appellant that "the case was going to be thoroughly investigat-

ed and that it was going to be sent to the District Attorney's office for their perusal to see if we had enough evidence to prosecute" and, "if he was going to leave town, to let us know and if he was going to go, to let us know so we can keep in contact with him." During that evening, appellant was neither placed under arrest nor told that he was going to be arrested. Further, appellant did not testify that he was placed under arrest, that he felt that he was deprived of his freedom or that he felt that he was not free to leave, if he so decided. We hold that, for purposes of Art. 32A.02 § 2(a), appellant was not "detained in custody" and, since appellant was not arrested, the criminal action against appellant did not commence at that time. Appellant's first ground of error is overruled.

In his second ground of error, appellant argues that, under the express language of Art. 32A.02 § 2(a), the criminal action against him commenced on February 24, 1983, the date on which the formal complaint was filed against him in Justice of the Peace Court. As noted above, Art. 32A.02 § 2(a), in pertinent part, provides that "a criminal action commences for purposes of this article when an indictment, information, *or complaint against the defendant is filed in court,* ...." (Emphasis added.)[1] Appellant acknowledges the holding in *Davis v. State*, which construes Art. 32A.02 § 2(a) and upon which the trial court relied in overruling appellant's motion to dismiss, but appellant contends that the holding in *Davis v. State* is erroneous.

In *Davis v. State*, the Amarillo Court of Appeals held:

1. We note that TEX.CODE CRIM.PROC.ANN. art. 15.04 (Vernon Supp.1984) defines the term "complaint" as follows:

Art. 15.04. Complaint
The affidavit made before the magistrate or district or county attorney is called a "complaint" if it charges the commission of an offense.

TEX.CODE CRIM.PROC.ANN. art. 15.05 (Vernon Supp.1984) sets forth the requisites of a valid complaint, upon which a magistrate pursuant to TEX.CODE CRIM.PROC.ANN. art. 15.-03 may issue a warrant of arrest or a summons. Neither Art. 32A.02 § 2(a) nor any other provi-

sion of the Texas Code of Criminal Procedure regarding the term "complaint" designates that term as having reference to misdemeanor prosecutions only. *Compare Ex Parte Hyett,* 610 S.W.2d 787 (Tex.Crim.App.1981); *Washington v. State,* 531 S.W.2d 632 (Tex.Crim.App.1976); *Austin v. State,* 531 S.W.2d 615 (Tex.Crim.App. 1975); *Chapple v. State,* 521 S.W.2d 280 (Tex. Crim.App.1975) (in non-capital felony cases where a defendant waives his right to be tried on an information pursuant to TEX.CODE CRIM.PROC.ANN. art. 1.141 (Vernon Supp. 1984), the information need not be but may be based upon a complaint).

Under Article 1, Section of the Texas Constitution and Article 1.05 of the Texas Code of Criminal Procedure, a person shall not be "held to answer" for a felony unless on indictment by a grand jury. When we read Section 1(1) and Section 2(a) of the Texas Speedy Trial Act in light of the mandatory language of Article 1, Section 10 of the Texas Constitution and Article 1.05 of the Texas Code of Criminal Procedure, we must conclude that, *as used in Section 2(a), the word "indictment" refers to felony prosecutions and the words "information or complaint" refer to misdemeanor prosecutions. It follows that, for the purposes of the Texas Speedy Trial Act, a felony criminal action commences when an indictment is filed in court or when the accused is arrested.*

*Davis v. State*, 630 S.W.2d at 538–539. (Emphasis added.)[2] Thus, the Amarillo Court of Appeals in *Davis v. State*, held that, in felony prosecutions, the filing of a complaint does not commence the "criminal action" for purposes of Art. 32A.02 § 2(a).

 Contrary to *Davis v. State*, we hold that, under the clear intent of the express language of Art. 32A.02 § 2(a), a criminal action, whether classified as a felony or misdemeanor prosecution, commences "when an indictment, information, *or complaint* against the defendant is filed in court, ..." We agree with the dissent in *Davis v. State* filed by Chief Justice Reynolds wherein he wrote:

Notwithstanding the majority's citation of Texas constitutional and statutory provisions for the proposition that no person shall be finally tried and convicted of a felony except upon indictment by a grand jury, unless waived, none of those provisions undertake to say, and do

not say, that the filing of a complaint accusing one of a felony offense with a justice of the peace is not the commencement of a prosecution. In fact, it has been held, long ago and recently, that the filing of a complaint accusing one of a felony offense with a justice of the peace is the initial step in the commencement of a prosecution under Texas law. *Baskins v. State*, 75 Tex.Cr.R. 537, 171 S.W. 723, 725 (1914); *Ex parte Clear*, 573 S.W.2d 224, 228 (Tex.Cr.App.1978).

Indeed, the very wording in *Clear*, paraphrased as to date and crime, exactly expresses the situation before us thusly: The complaint filed against appellant on 10 July 1975 was the initial step in a criminal action instituted to secure his conviction and punishment for the crime of arson. Id. So, the appellant became, within the meaning of *Marion* [*U.S. v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)], an "accused" on 10 July 1975 when the complaint was filed, and the length of delay is measured from that date. *Arivette v. State*, 513 S.W.2d 857, 861 (Tex.Cr.App.1974).

*Davis v. State*, 630 S.W.2d at 541.

Under our interpretation of Art. 32A.02 § 2(a), the trial court erred in concluding that the criminal action against appellant did not commence until appellant was indicted on March 7, 1984, and not when the formal complaint against him was filed on February 24, 1983.

In further support of our holding, we note the following language from *Bueno v. State*, 677 S.W.2d 261 (Tex.App.—Corpus Christi 1984, no pet.), a case which involved a felony prosecution for possession of heroin:

---

**2.** TEX. CONST. Art. 1 § 10 provides:

§ 10. Rights of accused in criminal prosecutions

Sec. 10. In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury ... and no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary, ...

TEX.CODE CRIM.PROC.ANN. art. 1.05 (Vernon Supp.1984) provides:

Art. 1.05. Rights of Accused

In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury.... No person shall be held to answer for a felony unless on indictment of a grand jury.

Appellant was charged with the offense which forms the basis of this appeal on January 4, 1983, *when the complaint was first filed. This was the day when the clock began to tick. Lyles v. State,* 653 S.W.2d 775 (Tex.Crim.App. 1983) (en banc).

*Bueno v. State,* 677 S.W.2d at 266. (Emphasis added.)

As set forth above, the State argues that, if the criminal action against appellant commenced at the time of the filing of the complaint on February 24, 1983, "thus putting the State to the burden of proving up excusable periods, the State has met this burden by showing due diligence to locate [appellant], which was unsuccessful."

In our case, the State first secured the presence of appellant on March 14, 1984, more than a year after the commencement of the criminal action on February 24, 1983. The State first announced ready for trial on March 12, 1984, also more than a year after the commencement of the criminal action on February 24, 1983.

■ The State may be ready for trial from an evidentiary standpoint and yet not ready for trial under Art. 32A.02 for failure to secure the presence of the defendant. The presence of the defendant is a readiness burden, which falls upon the State. This is clearly indicated by the fact that the Texas Speedy Trial Act tolling exceptions include three instances in which the State will not be charged with delays due to the defendant's absence. *Lyles v. State,* 653 S.W.2d 775 (Tex.Crim.App.1983); *Newton v. State,* 641 S.W.2d 530 (Tex. Crim.App.1982).

■ In this case, the potentially applicable time exclusions under the Texas Speedy Trial Act for delay resulting from a defendant's absence are those quoted above in Art. 32A.02 § 4 (4), (5) and (9). Because the statute specifically excludes time periods when the defendant is absent under the limited circumstances stated in Art. 32A.02 § 4 (4), (5) and (9) quoted above, it is obvious that the mere absence of the defendant is a circumstance that, except for those specific statutory exclusions, does not toll the statute. *Lyles v. State,* 653 S.W.2d at 778; *Newton v. State,* 641 S.W.2d at 531. Appellant's absence and the State's failure to secure appellant's presence for more than a year after the criminal action against him had commenced effectively rebutted the prima facie showing of readiness upon the State's announcement of ready on March 12, 1984.

■ Upon rebuttal by demonstration that the State was not ready for trial within the time allowed by Art. 32A.02, the burden shifted back to the State to prove that there were excludable periods of delay that would extend the initial time limitation. *Newton v. State,* 641 S.W.2d at 531.

Regarding appellant's absence and the State's failure to secure appellant's presence, the record of the hearing on the motion to dismiss reflects the following: Mission Police Officer George Rangel testified that Rangel received the arrest warrant issued by Justice of the Peace Arturo Leal on February 24, 1983. Soon afterwards, Rangel went to appellant's home to arrest appellant; at that time, appellant was not home and Rangel told "whoever was at the door when he gets back in town, have him call me." At the door of appellant's home, Rangel had been told that appellant "was somewhere in town working or looking for a job or something of that nature." A week or two later, Rangel received a telephone call from McAllen attorney Joe Chapa regarding appellant and was told that appellant "could turn himself over" to Rangel. Rangel testified that, "after Mr. Chapa told me that he was going to bring him in, I took Mr. Chapa's word that he was going to bring him in, which he never did, and I stopped looking for him. Then maybe about a week or so later, his secretary called me and asked me if Mr. Rios had turned himself in and I advised her that he hadn't." After receiving the telephone call from Chapa's secretary, Rangel then started looking for appellant again. Rangel had heard that appellant "was around" and "that he was living behind the

bus station on the 800 Block of Conway" and, after having gone there, Rangel "couldn't find him, nobody was home." Rangel also went to appellant's mother's house "a couple of times." Rangel never received a telephone call from appellant at the police station.

At the hearing on the motion to dismiss, appellant gave the following testimony: On February 18, 1983, appellant lived at his mother's house in Mission and, after February 18, 1983, appellant never moved from his mother's house into another home. Appellant never lived in "back of the bus station." When Rangel came to arrest him at his mother's house, appellant was "out of town" in Reynosa, Mexico, visiting his uncle. He visited his uncle there "about three hours" and went "back home to Mission" to his mother's house. Appellant went to the police station "a couple of times" and "both times Rangel was not there." Appellant left a message "once, the first time," and never turned himself into Officer Rangel "because he was never there when I went." After appellant spoke with McAllen attorney Joe Chapa, appellant went to see Rangel thereafter, but "he wasn't there." Sometime after February 18, 1983, appellant saw Rangel at the "Quintanilla Store," where Rangel waived "hi" to appellant and, when he left, Rangel said "Goodbye." Also sometime after February 18, 1983, appellant saw Rangel driving "from McAllen to Mission" at the intersection of Ware Road and Business Highway 83 in Mission. Rangel's car "was going about 30 or 40 miles per hour" and Rangel "took his eyes off the road and turned his head all the way, you know, towards me." Since February 18, 1983, until the time he was arrested on March 14, 1984, appellant did not "try and hide" from the police so that he would not be arrested in this case.

At the hearing on the motion to dismiss, Mission Police Officer Victor Flores testified that he did not know why appellant was not arrested from February 18, 1983, until March 14, 1984.

 After reviewing the evidence presented at the hearing on the motion to dismiss, we conclude that the State failed to discharge its burden under Art. 32A.02 § 4 "to prove there were excludable periods of delay that would extend the initial time limitation." *See Newton v. State*, 641 S.W.2d 530 (Tex.Crim.App.1982). The trial court erred in overruling appellant's motion to dismiss. Appellant's second ground of error is sustained.

We have considered all of appellant's remaining grounds of error and they are all overruled. The judgment of the trial court is REVERSED, and the indictment is ordered dismissed.