**Ross MASSEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 3–85–166–CR.

Court of Appeals of Texas,
Austin.

Sept. 24, 1986.

Patrick R. Ganne, Austin, for appellant.

Ronald Earle, Dist. Atty., Philip A. Nelson, Jr., First Asst. Dist. Atty., Austin, for appellee.

Before SHANNON, C.J., and Earl W. SMITH and GAMMAGE, JJ.

PER CURIAM.

A jury found appellant guilty of aggravated robbery. Tex.Pen.Code Ann. § 29.-03(a)(2) (1974). The jury then assessed punishment at confinement for forty years. In a single point of error, appellant argues that his indictment should have been set aside because the State failed to comply with the Speedy Trial Act. Tex.Code Cr.P. Ann. art. 32A.02 (Supp.1986). We will sustain appellant's point of error, reverse the conviction, and order appellant discharged. Tex.Code Cr.P.Ann. art. 28.061 (Supp.1986).

The instant offense occurred on November 6, 1983. The criminal action against appellant commenced for purposes of the Speedy Trial Act on either November 7, 1983, the day a complaint against appellant was filed and a warrant for his arrest issued, or on January 19, 1984, the day appellant was indicted. *Compare Apple v. State,* 647 S.W.2d 290 (Tex.Cr.App.1983) and *Rios v. State,* 688 S.W.2d 642, 646 (Tex.App.1985, pet. granted) (felony prosecution commences with filing of complaint) *with Rosebury v. State,* 659 S.W.2d 655, 657, n. 1 (Tex.Cr.App.1983) (Clinton, J., concurring) and *Davis v. State,* 630 S.W.2d 532 (Tex.App.1982, no pet.) (felony prosecution commences with filing of indictment or information). The State first announced ready on December 13, 1983. The State does not rely on this announcement for good reason: on that date, appellant was not in custody and had not been indicted. *Newton v. State,* 641 S.W.2d 530 (Tex.Cr. App.1982) (absence of defendant rebuts announcement of ready); *Pate v. State,* 592 S.W.2d 620 (Tex.Cr.App.1980) (lack of indictment rebuts announcement of ready). On April 22, 1985, the day of the hearing

on appellant's motion to dismiss, the State announced that it was then ready and had been ready at all times since appellant's return to Travis County, which the evidence reflects was on March 21, 1985. This second announcement of ready is unrebutted, and the issue presented is whether the seventeen-month period of delay preceeding March 21 is excludable under § 4 of the Act.

At the hearing, Tommie Haffelder of the Austin police department testified that after the arrest warrant was issued, he entered appellant's name in the city computer system and state and national crime information systems, and made several phone calls in an unsuccessful attempt to locate appellant. On January 6, 1984, the Austin police department received a teletype from the United States Marshal's office in Emilia, Louisiana, stating that appellant had been apprehended and was in custody on a federal parole violation. Officer Roger Behr testified that he sent a teletype to the sheriff's office in Emilia placing a hold on appellant, and received a return teletype advising him that the Austin police would be notified when appellant was ready for extradition. Behr then cancelled the computer system entries previously made. He testified that it was his office's usual procedure to await further notification from the federal authorities as to appellant's availability.

Haffelder testified that within four weeks of receiving notification that appellant was in federal custody in Louisiana, he contacted the federal parole office in Austin to verify the information and was told that appellant would be held by federal authorities until a parole revocation hearing had been held. On March 20, 1984, Lawanna Spears, the federal parole officer in Austin, notified Haffelder that appellant had been transferred to federal prison in Leavenworth, Kansas, but that his parole revocation hearing had not yet taken place and would be held sometime in the future. Haffelder testified that he never personally relayed any of the information that he received as to appellant's whereabouts to Phil Nelson, the assistant district attorney in charge of extraditions because he, Haffelder, was under the impression that someone else had done so.

Nelson testified that his initial role in appellant's case consisted of authorizing of the entry of appellant's name into the national computer system. He stated that he was aware that appellant was in federal custody in Louisiana and that a hold had been filed on appellant in Louisiana. Nelson's next involvement in the case occurred in November, 1984, when he received a letter, dated October 30, 1984, from a prison official at Leavenworth. The letter noted that appellant's parole violator packet indicated that he could be charged in Texas with armed robbery, inquired whether this charge had been disposed of, and asked if Texas officials wished to place a detainer. Nelson responded by mailing to Leavenworth a certified copy of the capias for appellant's arrest. On December 5, 1984, Nelson formally requested temporary custody of appellant pursuant to Tex.Code Cr. P.Ann. art. 51.14 (1979). Appellant was returned to Travis County on March 21, 1985.

Appellant testified that he had been in continuous confinement since January 5, 1984 and had filed a motion for a speedy trial on March 23, 1984. Each of several employees of the prosecutor's office testified that no such motion had ever been received by them. Appellant also testified, without contradiction, that his federal parole was revoked in April, 1984.

■ Section 4 of the Speedy Trial Act provides, in pertinent part:

In computing the time by which the state must be ready for trial, the following periods shall be excluded:

(1) a reasonable period of delay resulting from other proceedings involving the defendant, including but not limited to proceedings for the determination of competence to stand trial, hearing on pretrial motions, appeals, and trials of other charges;

.    .    .    .    .

(4) a period of delay resulting from the absence of the defendant because his location is unknown and:

(A) he is attempting to avoid apprehension or prosecution; or

(B) the state has been unable to determine his location by due diligence;

. . . . .

(9) a period of delay resulting from detention of the defendant in another jurisdiction if the State is aware of the detention and exercises due diligence to obtain his presence for trial.

After reviewing the facts adduced at the hearing, we find that the period of delay prior to January 6, 1984, is excludable under § 4(4)(B). Before that date, appellant's whereabouts were unknown despite diligent efforts by the police to locate him. We further find that the period of delay following Nelson's receipt of the October 30, 1984, letter is excludable under § 4(9). Upon receipt of this letter, steps were promptly taken to obtain temporary custody of appellant pursuant to art. 51.14. We must conclude, however, that the State did not show due diligence during the ten months from January to November, 1984, and that this period of delay cannot be excluded under § 4(9).

Upon learning of appellant's arrest on January 6, 1984, the Austin police promptly teletyped a hold on appellant to the sheriff in Louisiana. On January 19, prosecutors secured the return of an indictment. Thereafter, nothing was done by either the police or prosecutors to secure appellant's presence for trial in Travis County until November, although one inquiry into appellant's status was made in February. In our opinion, such lack of attention or concern, particularly by prosecutors, is incompatible with a finding of due diligence. *See Lloyd v. State,* 665 S.W.2d 472 (Tex.Cr. App.1984); *Barfield v. State,* 586 S.W.2d 538 (Tex.Cr.App.1979) (Speedy Trial Act addresses itself to prosecutorial delay).

Citing *Salas v. State,* 682 S.W.2d 414 (Tex.App.1984, no pet.), the State argues that due diligence did not require further

efforts on its part after the hold was placed on appellant in January. We disagree.

In *Salas,* a warrant for the defendant's arrest was issued in Harris County in September, 1982. In January, 1983, the defendant was arrested in New York and the State promptly placed a detainer on him. In March, the defendant was returned to Harris County in federal custody, and a second detainer was filed by the State with the United States Marshal's office in Houston. Although the defendant was shortly thereafter ordered released to the custody of the State by a federal district judge, the State was not notified and did not learn of this order until June 30, when an investigator from the district attorney's office inquired into the status of the case.

The court in *Salas,* noting that the State failed to make any inquiry about the status of the defendant's federal proceeding from April 6, the date of the second detainer, to June 30, framed the question presented as "whether, after filing its detainer with the United States, the state was required to make additional efforts to obtain appellant's presence in state court during that two and one half month period in order to prove due diligence under the Act." 682 S.W.2d at 417. The court concluded that because two and one-half months was not an unreasonable period of time to allow for the disposition of the federal charges, the State did not display a lack of due diligence by failing to inquire into the status of the federal proceedings during that time period.

Contrary to the State's argument, the opinion in *Salas* does not hold that the filing of a detainer is in itself sufficient to constitute due diligence on the part of the State. The opinion merely holds that by failing to make further inquiries for two and one-half months after placing the detainer, the State did not show a lack of due diligence.

In the instant cause, a hold was placed on appellant on January 6, 1984. Four weeks later, Austin police contacted the federal parole office in Austin to verify that appellant was being held by the feder-

al government. Thereafter, no further inquiry into the status of the federal proceedings was made until November, and then only because the prosecutor received a letter of inquiry from federal authorities. It is also significant that after it was learned in March that appellant had been transferred to Leavenworth, a detainer was not filed with the appropriate authorities there. This is in contrast to *Salas,* where the State lodged a second detainer after learning of the defendant's transfer from New York to Houston.

In determining whether the State exercised due diligence to secure the presence of a defendant detained in another jurisdiction, all relevant evidence must be considered. While the hold placed on appellant after his arrest by federal authorities is evidence of diligence, this Court cannot ignore the subsequent ten-month delay during which little or nothing was done to bring appellant to Travis County for trial.

During argument at the hearing on appellant's motion to dismiss, the State sought to excuse the inactivity of the prosecutor's office by noting that the police had failed to keep that office informed of appellant's whereabouts and the status of the federal proceeding. In its brief in this Court, the State points the finger of blame at the federal authorities who failed to notify the State of the completion of the federal parole revocation proceeding. A similar argument was made in *Lyles v. State,* 653 S.W.2d 775 (Tex.Cr.App.1983), wherein the State sought to excuse its failure to timely secure the defendant's presence by blaming a mistake in the processing of a bail bond by the sheriff. The court rejected this argument, stating:

> In [*Barfield v. State,* 586 S.W.2d 538 (Tex.Cr.App.1979),] this court made clear the Speedy Trial Act refers to the preparedness of the prosecutor for trial.... The prosecutor cannot excuse a lack of due diligence on his part by pointing the finger at the Sheriff or other law enforcement agency. The circumstances reflect the situation was resolved once the prosecutor began to exercise dil-

igence in the matter.... The delay could have, and should have been avoided by simple means, not requiring any stenuous (sic) exercise of due diligence by the State.

653 S.W.2d at 779.

In its recent opinion in *Ex parte Powell,* 699 S.W.2d 841 (Tex.Cr.App.1985), the Court of Criminal Appeals held that the time the defendant was in federal custody awaiting disposition of federal charges was excludable under § 4(1) of the Act. Thus, despite the State's lack of due diligence, it is arguable that the period of time from appellant's arrest in January, 1984, until final disposition of the federal parole revocation in April of that year is excludable. That nevertheless leaves an unexcludable delay of approximately six months, far in excess of that allowed by the Act. We hold that the State failed to prove its readiness for trial within the time limit specified by the Speedy Trial Act.

■ We turn next to the State's contention that the Speedy Trial Act is unconstitutional because the title or caption to the Act did not comply with the notice requirements of Tex.Const. art. III, § 35 (1984). The only authority cited by the State for this proposition is the dissenting opinion in *Noel v. State,* No. 827–83, Tex.Cr.App., March 14, 1984 (not yet reported), in which four judges of the Court of Criminal Appeals expressed the view that the caption of the Speedy Trial Act "suffers from the exact malady diagnosed in" *Crisp v. State,* 661 S.W.2d 944, 956 (Tex.Cr.App.1983), affirming 643 S.W.2d 487 (Tex.App.1982). One Court of Appeals has reached the same conclusion, albeit in dicta. *Stewart v. State,* 699 S.W.2d 695 (Tex.App.1985, no pet.). Three other courts of appeals, however, have found the caption constitutionally sufficient. *Morgan v. State,* 696 S.W.2d 465 (Tex.App.1985, no pet.); *Wright v. State,* 696 S.W.2d 288 (Tex.App.1985, no pet.); *Beddoe v. State,* 681 S.W.2d 114 (Tex. App.1984, pet. granted).

**772**

The caption found deficient in *Crisp* read in its entirety:

An act relating to offenses and criminal penalties under the Texas Controlled Substances Act.

The caption to the Speedy Trial Act read as follows:

An act relating to a speedy trial of criminal cases; amending the Code of Criminal Procedure, 1965, as amended, by adding Chapter 32A, by adding Articles 17.-151 and 28.061, and by amending Articles 29.02 and 20.03; providing for an effective date; and declaring an emergency.

1977 Tex.Gen.Laws, ch. 787, at 1970.

It is arguable that if the caption to the Speedy Trial Act had *only* stated that the Act related to the speedy trial of criminal cases, it would have been inadequate for the reasons articulated in *Crisp*. But the caption did not stop there. The caption also informed legislators that the bill in question added a chapter to the Code of Criminal Procedure, added or amended several articles of that Code, provided for an effective date (implicitly, one different from that ordinarily applicable), and declared an emergency. It was for the want of such details that this Court found the caption considered in *Crisp* to be inadequate. *Crisp v. State*, 643 S.W.2d at 490, 491.

It is instructive to compare the caption in question with the captions challenged in *Turnipseed v. State*, 609 S.W.2d 798 (Tex. Cr.App.1980); *Bates v. State*, 587 S.W.2d 121 (Tex.Cr.App.1979); and *Putnam v. State*, 582 S.W.2d 146 (Tex.Cr.App.1979). In each of these cases, the Court of Criminal Appeals found captions substantially similar to the one challenged in this cause to be constitutionally adequate.

We hold that the caption of the Speedy Trial Act gave constitutionally adequate notice of the content of the Act. Because the trial court erred in overruling appellant's motion to dismiss for violation of the Act, we reverse the judgment of conviction and order the indictment dismissed.